570 So.2d 185 (1990)
STATE of Louisiana
v.
Paul MAYEAUX.
No. 90-KA-352.
Court of Appeal of Louisiana, Fifth Circuit.
November 14, 1990.
Writ Denied February 22, 1991.
*188 Martin E. Regan, Jr. and Isidro René DeRojas, New Orleans, for defendant/appellant.
Ronnie Bodenheimer and Terry M. Boudreaux, Asst. Dist. Attys., Research & Appeals, Gretna, for the State.
Before BOWES, GAUDIN and GOTHARD, JJ.
BOWES, Judge.
Defendant, Paul Mayeux, was convicted of one count of aggravated battery (LSA-R.S. 14:34); one count of criminal conspiracy to commit aggravated battery (LSA-R.S. 14:26, 14:34); and one count of intimidating a witness (LSA-R.S. 14:129.1).[1] Defendant was sentenced pursuant to a multiple bill to twenty years at hard labor for the aggravated battery conviction, five years at hard labor for the criminal conspiracy conviction and five years at hard labor for the intimidating a witness conviction. The trial judge ordered that each sentence was to be served consecutively with the others and consecutively with any other sentence the defendant was serving at the time of this sentencing. Defendant now appeals his convictions and sentences. We affirm.

FACTS
Paul Mayeux, the defendant, met Peggy Theriot, the victim, while Ms. Theriot was legally separated from her husband. The defendant and Ms. Theriot became intimately involved in a relationship that lasted about three years until Ms. Theriot and her husband attempted reconciliation. Shortly after the Theriots reconciled, the defendant began harassing Ms. Theriot by following her around and by creating disturbances at her workplace. In November of 1987, the defendant was arrested and charged with burglarizing an apartment leased by Ms. Theriot without the defendant's knowledge.
On December 3, 1987, a female assailant threw a chemical substance into Ms. Theriot's face, blinding her and causing her severe burns. The incident occurred when Ms. Theriot arrived for work that morning. After parking her car in the lot adjoining the building where she worked, Ms. Theriot walked toward the building entrance. A woman approached Ms. Theriot, made a comment about waiting for a ride and then asked what time it was. As Ms. Theriot looked down at her watch, the woman threw the liquid contents of a cup she was holding into Ms. Theriot's face and then fled. The substance was later determined to be a concentrated alkaline liquid which was highly noxious and capable of producing severe chemical burns to human skin.
When Ms. Theriot was attacked on December 3, 1987, the defendant was still in custody at the Jefferson Parish Correction Center on the burglary charges pending against him. The defendant denied any involvement in the assault on Ms. Theriot. However, even prior to the incident the defendant had communicated threats to have acid thrown into the victim's face. After the incident, the defendant detailed his involvement in the attack on Ms. Theriot during conversations with certain fellow inmates at the correctional facility. Mayeux explained that he arranged the attack by telephone from the jail in order to get revenge on Ms. Theriot for rejecting him and for having him arrested.
In February, 1988, while still incarcerated, the defendant began telephoning Ms. Theriot at her home on a daily basis to discuss their relationship and the charges against him. These telephone calls continued for two months, and Ms. Theriot began tape-recording the calls after the defendant refused to quit calling her. During these telephone calls, the defendant communicated several threats, both direct and indirect, that Ms. Theriot would suffer additional harm if she continued to assist in the prosecution of the defendant. Additionally, the defendant makes certain statements indicating his involvement in the attack on Ms. Theriot.
*189 On appeal, defendant specified nineteen assignments of error. However, assignments number three, six, seven, eight, ten and thirteen are not argued in brief and are therefore considered abandoned. Uniform Rules-Courts of Appeal, Rule 2-12.4.

ASSIGNMENTS OF ERROR NUMBERS ONE AND TWO
In these assignments, defendant alleges reversible error in two instances where the trial court denied his motions for mistrial.
During the trial, the state played for the jury several of the taped telephone conversations between the defendant and the victim. In one of these conversations Ms. Theriot made a comment about the defendant buying cocaine. Defendant argues that this constitutes reference to another crime and was highly prejudicial.
Where a witness makes an improper comment, the trial court is afforded the discretion to determine whether the comment warrants a mistrial or an admonition to the jury. C.Cr.P. art. 770; 771; State v. Walters, 514 So.2d 257 (La.App. 5th Cir. 1987), writ denied, 523 So.2d 811 (La.1988).
In this case, the trial judge denied the defense motion for a mistrial after finding that the challenged comment did not substantially prejudice the defendant, particularly in light of references to the defendant's alleged use of drugs in earlier taped conversations played for the jury without objection. The trial judge was therefore well within his discretion in denying a mistrial.
On appeal, defendant argues that, at the very least, the trial court should have admonished the jury to disregard the comment. The defendant did not request an admonition to the jury at trial, and, therefore, the lack of admonishing instruction does not constitute error. State v. Sherer, 411 So.2d 1050 (La.1982).
Defendant's second motion for mistrial occurred when, in one of the tape-recorded conversations between the defendant and Ms. Theriot, the defendant refers to blacks as "niggers". Defendant argues that this reference to blacks was highly prejudicial and inflammatory.
L.C.E. art. 403 provides that: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time."
The trial judge carefully evaluated the prejudicial effect and inflammatory nature of the challenged reference by considering the reference in context with the statement of which it is a part. He concluded that this reference was not racially motivated, but rather was characteristic of the defendant's manner of expressing himself. This conclusion seems to be well supported as the defendant used numerous expletives in the portion of the recorded conversation submitted for review. We find, as the trial judge did, that the defendant's reference to "niggers" in that conversation is no more prejudicial or inflammatory than the other expletives he used. Any unfair prejudice which may have resulted from the admission of the conversation with the reference included did not substantially outweigh the probative value of admitting the conversation in the exact form used by the defendant.
These assignments lack merit.

ASSIGNMENTS OF ERROR NUMBERS FOUR, FIVE, NINE, ELEVEN AND TWELVE
In these assignments of error, defendant seeks review of five relevancy rulings made during the trial.
Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." LSA-C.E. 401. All relevant evidence is admissible, unless subject to a constitutional, statutory or codal exclusion. LSA-C.E. 402. When ruling on the relevancy of evidence, the trial judge considers everything he knows about the case as illuminated by counsel's arguments regarding the relevance of the evidence. *190 Louisiana's relevancy standard is based on logic and experience. State v. Davenport, 445 So.2d 1190 (La.1984). Absent a clear abuse of discretion, a trial court's ruling on the relevancy of evidence should not be disturbed on appeal. State v. Whittaker, 463 So.2d 1270 (La.1985).
The defendant sought to question victim regarding the identity of individuals to whom she had related that he was the father of her second child and the bank where she maintained her savings account. Defendant also engaged in an unfocused line of questioning attempting to identify a large group of persons who might have had reason to be angry with Ms. Theriot. In each case, the state objected to defendant's questions and the trial court sustained each objection.
A thorough review of each record convinces us that the trial judge did not abuse his discretion in sustaining these objections.
These assignments are meritless.

ASSIGNMENT OF ERROR NUMBER FOURTEEN
In this allegation, defendant alleges that the trial court, over objection of defendant's counsel allowed the state to exceed the permissible scope of closing argument on two occasions.
In the first instance, the prosecutor referred to the victim during his closing argument and made the following statement: "And about sex in a burning ring of candles? You heard any evidence of anybody saying anybody had sex in a burning ring of candles?" Defense counsel objected that this statement exceeded the permitted scope of argument because the trial court had ruled that the defendant could not cross-examine Ms. Theriot on that subject.
The defendant also objected to the prosecutor's comments during closing argument about a pharmacist alleged by the defense to have been amorously linked with the victim. Similar to his previous objection, defense counsel complained that these comments were improper because the trial court had prevented the defendant from questioning the victim about her sex life.
LSA-C.Cr.P. art. 774 provides:
The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.
The argument shall not appeal to prejudice.
The state's rebuttal shall be confined to answering the argument of the defendant.
We have reviewed the record thoroughly and find that the evidence presented at trial amply supported the prosecutor's comments and therefore the comments were within the scope of permissible closing argument.
Furthermore, while Ms. Theriot was under cross-examination, the trial judge permitted the defense, over the state's objection, to question her about accusations made by the defendant that Ms. Theriot was seeing a pharmacist and was having sexual encounters within a ring of candles set up at an apartment.
Accordingly, we find these assignments to be without merit.

ASSIGNMENT OF ERROR NUMBER FIFTEEN AND SIXTEEN
In these assignments defendant objects to the charges given to the jury by the trial court.
In assignment number fifteen, the defendant complains that the jury charge on reasonable doubt was constitutionally defective because it prohibited the jury from considering lack of evidence and because it inadequately explained reasonable doubt.
The necessary elements of a jury charge are set forth in LSA-C.Cr.P. 804 which provides that:
A. In all cases the court shall charge the jury that:
(1) A person accused of crime is presumed by law to be innocent until each element of the crime, necessary to constitute *191 his guilt, is proven beyond a reasonable doubt;
(2) It is the duty of the jury, in considering the evidence and in applying to that evidence the law as given by the court, to give the defendant the benefit of every reasonable doubt arising out of the evidence or out of the lack of evidence in the case; and
(3) It is the duty of the jury if not convinced of the guilt of a defendant beyond a reasonable doubt, to find him not guilty.
The court may, but is not required to define "the presumption of innocence" or "reasonable doubt" or give any other or further charge upon the same than that contained in this article.
In the present case, the trial judge delivered a lengthy jury charge containing the following pertinent instructions:
Although you are the sole judges of the law and the facts on the question of guilt or innocent, you have the duty to accept and apply the law as given by the court. You must decide the facts from the testimony and other evidence and apply the law to those facts in reaching your verdict.
The defendant is presumed to be innocent until each element of the crime necessary to constitute his guilt is proved beyond a reasonable doubt....
The burden is on the state to prove the defendant's guilt beyond a reasonable doubt. In considering the evidence, you must give the defendant the benefit of every reasonable doubt arising out of the evidence or out of the lack of evidence. If you are not convinced of the guilt of the defendant beyond a reasonable doubt, you must find him not guilty....
Reasonable doubt is doubt based on reason and common sense and is present when, after you have carefully considered all the evidence, you cannot say that you are firmly convinced of the truth of the charge. You must determine whether a fact has been proven only from the evidence presented or from a lack of evidence....
You are prohibited from [sic] law and your oath from going beyond the evidence to seek doubts upon which to acquit the defendant, but must confine yourself strictly to a dispassionate consideration of the testimony given upon the trial. You must not resort to extraneous facts or circumstances in reaching your verdict. That is, you must not go beyond the evidence to find facts or circumstances creating doubts, but must restrict yourself to the evidence that you heard on the trial of this case or lack of evidence.
You are the exclusive judges of the facts. You are to find from the evidence which facts have been proven and which facts have not been proven.
We have carefully reviewed this charge and find that the elements of LSA-C.Cr.P. art. 804 are eminently paraphrased and the charge properly instructs the jury in its duties.[2] In addition, we take judicial cognizance of the fact that the same, or almost identical general charge as the one here has been used by the Judges of the 24th Judicial District Court for many years and, consequently, have been the subject of appellate scrutiny and appellate approval innumerable times in the past.
The defendant also alleges that the trial court committed reversible error by failing to use the special jury charge on lesser included offenses which he submitted to the court.
LSA-C.Cr.P. art. 807 mandates that the trial court shall give a requested jury charge "if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given."
Our review of the jury charges in this case show that the trial court provided very detailed instructions on the lesser included offense for each particular crime and further described the circumstances under *192 which a finding of guilt on a lesser included offense would be appropriate. We find that, under these circumstances, the trial court's refusal to give the defendant's requested special charge was proper.
We find these assignments meritless.

ASSIGNMENT OF ERROR NUMBER SEVENTEEN
The defendant alleges that insufficient evidence exists to support each of his three convictions.
Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) announced the due process standards applicable in evaluating the sufficiency of the evidence to support a criminal conviction. Under Jackson, the reviewing court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt.
Each of the defendant's convictions will be reviewed separately.

a. Aggravated Battery (LSA-R.S. 14:34)
Battery is defined as: "the intentional use of force or violence upon the person of another, or the intentional administration of a poison or other noxious liquid or substance to another." LSA-R.S. 14:33. An aggravated battery is one committed with a dangerous weapon. LSA-R.S. 14:34. Under the criminal law of this state, principal parties to crimes are: "All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime." LSA-R.S. 14:24. The defendant was convicted as a principal in the aggravated battery of Ms. Theriot.
At trial the evidence showed that, on the morning of December 3, 1987, an assailant intentionally threw a highly noxious alkaline liquid into Ms. Theriot's face. Although he was in jail at the time the offense was actually committed, the defendant admitted his involvement in the crime to several of his fellow inmates. The defendant told these inmates that he procured the perpetration of the crime by telephone from jail. Moreover, after the incident, the defendant indicated that he was responsible for the attack during his telephone conversations with the victim. On the witness stand, however, the defendant denied any involvement in the crime.
By returning a unanimous verdict of guilty, the jurors obviously found, as they were entitled to do, that the testimony of the state's witnesses was more credible than that of the defense witnesses. It is not the function of an appellate court reviewing a criminal conviction to evaluate the credibility of witnesses and to overturn a jury's factual determination of guilt. State v. Richardson, 425 So.2d 1228 (La. 1983); State v. Barnes, 491 So.2d 42 (La. App. 5th Cir.1986). The appellate court will not disturb the credibility determinations of the trier of fact beyond the sufficiency evaluation under the Jackson review standards. State v. Richardson, supra, State v. Boudreaux, 526 So.2d 230 (La. App. 5th Cir.1988).

b. Conspiracy to Commit Aggravated Battery (LSA-R.S. 14:26, 14:34)
The elements of the crime of conspiracy are (1) an agreement or combination of two or more persons for the specific purpose of committing a crime, plus (2) an act done in furtherance of the object of the agreement or combination. LSA-R.S. 14:26. An overt act need not be unlawful. It may be any act, innocent or illegal, accompanying or following the agreement, which is done in furtherance of its object. State v. Richards, 426 So.2d 1314 (La.1982). Specific intent is an essential element of the crime of conspiracy. Louisiana State Bar Ass'n v. Pitard, 462 So.2d 178 (La.1985). Specific intent is defined as the state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. LSA-R.S. 14:10(1). Although intent is a factual question, it may *193 be inferred from the circumstances of the transaction and the actions of the defendant. State v. Boyer, 406 So.2d 143 (La. 1981). The existence of specific intent is an ultimate legal conclusion to be decided by the trier of fact. State v. Graham, 420 So.2d 1126 (La.1982).
The evidence presented at trial established that the defendant and at least one other person entered into an agreement for the specific purpose of committing an aggravated battery on Ms. Theriot. The defendant admitted to others that he arranged for the aggravated battery from jail; the assailant, whom Ms. Theriot had never seen before, had been provided with such details as the location of the victim's workplace, the approximate arrival time of the victim at work in the morning, and a rather accurate description of the victim and/or her automobile. The assailant's apparent knowledge of this information supports the existence of the agreement necessary as an element of the conspiracy in this case.
In addition, Ms. Theriot testified the defendant threatened to throw acid in her face prior to the incident in question. The assailant's actions prove that the noxious substance was deliberately thrown into the victim's face.
The specific intent element of this conspiracy can be inferred not only from the circumstances surrounding the commission of this aggravated battery, but also from the actions taken by the defendant and the assailant to accomplish the battery.

c. Intimidating a Witness (LSA-R.S. 14:129.1)
In pertinent part, LSA-R.S. 14:129.1 provides:
No person shall intentionally:
(a) Intimidate or impede, by threat of force or force, or attempt to intimidate or impede, by threat of force or force, a witness with intent to influence his testimony, his reporting of criminal conduct or his appearance at a judicial proceeding;
* * * * * *
For purposes of this Section, a "witness" is a person (a) who is a victim of conduct defined as a crime under the laws of this state, another state or the United States, or (b) whose declaration under oath has been received in evidence in any court of this state, another state or the United States, or (c) who has reported a crime to a peace officer, prosecutor, probation or parole officer, correctional officer or judicial officer of this state, another state or the United States, or (d) who has been served with a subpoena issued under authority of any court of this state, another state or the United States.
During the trial of this matter, the state introduced into evidence numerous tape-recordings of telephone conversations between the defendant and Ms. Theriot. All of these conversations occurred while the defendant was in jail awaiting trial on charges stemming from the burglary of Ms. Theriot's apartment. On numerous occasions during these conversations, the defendant communicated to Ms. Theriot violent threats of harm if she did not seek dismissal of the criminal charges against him or if she appeared at trial to testify against him. The defendant threatened to harm not only Ms. Theriot, but also other members of her family. Through this evidence, the state established at trial that the defendant attempted to intimidate Ms. Theriot by threat of force, with the specific intent to influence her reporting of criminal conduct and/or her appearance at judicial proceedings.
A thorough review of the trial proceedings in this case convinces us that sufficient evidence was presented for each of the defendant's three convictions.
This assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER EIGHTEEN
The defendant argues that his sentence is excessive.
The record reflects that the trial judge imposed the maximum sentence for each of the defendant's three convictions and ordered those sentences to run consecutively. *194 The ten-year maximum sentence authorized by LSA-R.S. 14:34 for aggravated battery was enhanced to twenty years by the trial court after the defendant was adjudicated a second-time felony offender. The maximum enhancement permitted under Louisiana's habitual offender statute. LSA-R.S. 15:529.1 A(1). The defendant received the maximum five-year sentence on each of his other two convictions, conspiracy to commit aggravated battery (LSA-R.S. 14:26, 14:34) and intimidating a witness (LSA-R.S. 14:129.1).
A sentence within the prescribed statutory limits may be unconstitutionally excessive if the sentence is grossly disproportionate to the severity of the crime or if it is nothing more than the purposeless and needless imposition of pain and suffering. State v. Sweeney, 443 So.2d 522 (La.1983). Maximum sentences are reserved for cases involving the most serious violations of the charged offense and for the worst kind of offender. State v. Quebedeaux, 424 So.2d 1009 (La.1982).
In reviewing a sentence for excessiveness, the court must consider the punishment and the crime in light of the harm to society and gauge whether the penalty is so disproportionate as to shock one's sense of justice while also recognizing that a trial judge is afforded wide discretion in imposing sentence. State v. Lynch, 512 So.2d 1214 (La.App. 5th Cir.1987). A sentence imposed within statutory limits may not be set aside absent manifest abuse of the trial court's discretion. State v. Lanclos, 419 So.2d 475 (La.1982).
Sentences for offenses arising out of a single course of criminal conduct are usually served concurrently. LSA-C.Cr.P. art. 883.
Particular justification is required to impose consecutive sentences for convictions arising out of a single course of criminal conduct. Consecutive sentences are justified when, as in this case, the offender poses an unusual risk to the safety of society. State v. Gaudin, 493 So.2d 234 (La.App. 5th Cir.1986), appeal after remand, 508 So.2d 594 (La.App. 5th Cir. 1987).
We find that the record in this case provides more than ample support for the trial judge's imposition of consecutive, maximum sentences. The victim in this case suffered blindness and permanent disfigurement as a result of this crime. Ms. Theriot has endured excruciating pain from the chemical burns inflicted upon her and has been forced to undergo a long series of painful surgeries in an attempt to rehabilitate her eyes. The physical and emotional scars of this criminal act will remain with Ms. Theriot for the remainder of her life. Referring to the manner in which the defendant planned and executed this crime, the trial judge stated at the sentencing: "... it was not done out of instant heat of passion. It was done coolly over a number of days, coolly and calculated to get a result."
Accordingly, we find that the defendant's sentences are not excessive.

ASSIGNMENT OF ERROR NUMBER NINETEEN
The defendant argues that his enhanced sentence as a multiple offender must be set aside because of the state's failure to prove Boykinization at the predicate plea conviction. The basis for the multiple offender bill in this case was a guilty plea to possession of cocaine (LSA-R.S. 40:967), made on December 4, 1986.
In a multiple offender proceeding, the state has the burden of proving by competent evidence that a prior felony exists and that the defendant is the same person who was convicted of that prior felony. State v. Chaney, 423 So.2d 1092 (La.1982). If the prior felony conviction resulted from a guilty plea, the state is required to show that the defendant was advised of his constitutional rights and that he knowingly waived those rights prior to the guilty plea, as required by Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). State v. Ross, 542 So.2d 631 (La.App. 5th Cir.1989).
In this case, the state offered evidence of a prior felony conviction for possession of cocaine (LSA-R.S. 40:967) and *195 evidence in the form of fingerprint analysis that the defendant was the same person who committed that felony. Since the defendant pled guilty in that case, the state introduced the transcript of the Boykin colloquy between the trial judge and the defendant, as well as a copy of the waiver of rights form executed by the defendant.
We find that the defendant's previous felony conviction for possession of cocaine served as a proper predicate for the multiple offender bill filed in this case, and therefore, this assignment lacks merit.
Upon request of the defendant, this Court has also reviewed the record for errors patent. See State v. Oliveaux, 312 So.2d 337 (La.1975).
A review of the record reflects that the defendant's enhanced sentence as a second-time felony offender is unlawfully lenient because it was not imposed without benefit of probation or suspension of sentence, as mandated by LSA-R.S. 15:529.1 G. However, because the state has failed to raise the issue of the illegally lenient sentence, this Court will not consider it. La.C.Cr.P. art. 882; State v. Brooks, 496 So.2d 1208 (La.App. 5th Cir.1986).
For the above discussed reasons, the defendant's convictions and sentences are affirmed.
AFFIRMED.
NOTES
[1] Defendant was also charged with inciting a felony (LSA-R.S. 14:28), however, that count was dismissed prior to trial.
[2] We note that the jury charge presented by the trial court bears a strong resemblance to the jury charge recently approved by this Court in State v. Humphrey, 544 So.2d 1188 (La.App. 5th Cir.1989).