STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

09-607 consolidated with 09-608


STATE OF LOUISIANA

VERSUS

CARL ANTHONY GOBERT


************

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NOS. CR 104183 & CR 119176
HONORABLE PATRICK L. MICHOT, DISTRICT JUDGE

************

JAMES T. GENOVESE
JUDGE

************

Court composed of Elizabeth A. Pickett, James T. Genovese, and J. David Painter, Judges.

**AFFIRMED.**

**James E. Beal**
**Louisiana Appellate Project**
**Post Office Box 307**
**Jonesboro, Louisiana 71251-0307**
**(318) 259-2391**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Carl Anthony Gobert**

**Michael Harson**
**District Attorney – Fifteenth Judicial District**
**Daniel M. Landry, III, Assistant District Attorney**
**Post Office Box 3306**
**Lafayette, Louisiana 70506**
**(337) 232-5170**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**GENOVESE, Judge.**

Subsequent to habitual offender adjudication, the Defendant, Carl Anthony Gobert, appeals his habitual offender sentence of twenty years at hard labor. For the following reasons, we affirm his conviction.

## PROCEDURAL HISTORY

The Defendant was charged by bill of information in trial court docket number 104183 with second degree battery, in violation of La.R.S. 14:34.1. The Defendant entered a plea of not guilty on December 5, 2006. Pursuant to trial by jury, the Defendant was found guilty as charged and was sentenced to serve five years at hard labor and to pay a fine of $2,000. An oral motion for appeal was subsequently made.

Thereafter, the Defendant was charged as an habitual offender in trial court docket number 119176. He denied the charge and was then adjudicated a fourth offender under La.R.S. 15:529.1. His previous sentence was vacated, and he was sentenced, as an habitual offender, to twenty years at hard labor.

A Motion for Appeal, Consolidation with Original Appeal and Designation of Record was filed on December 23, 2008, and subsequently granted. The Defendant is now before this court asserting one assignment of error. He contends that the evidence is insufficient to support his conviction.

## FACTS

On July 12, 2004, Vial Thibodeaux, Jr., worked at Wal-Mart. While breaking down merchandise shipments, he was approached by the Defendant and Flora Thomas and asked if the merchandise he was handling was clearance merchandise. Mr. Thibodeaux indicated that it was not, and the two then left.

Mr. Thibodeaux later heard the alarm at the door go off and saw Ms. Thomas

1

go through the doors with a buggy filled with merchandise. Mr. Thibodeaux approached Ms. Thomas and asked her for a receipt. Ms. Thomas stated that she had paid for the merchandise in the back of the store and left her receipt there. Ms. Thomas continued walking outside, and Mr. Thibodeaux grabbed the buggy. Once outside, Mr. Thibodeaux was hit from behind. Mr. Thibodeaux stated that as a result of being struck, he was rendered unconscious for a few minutes, and, when he awoke, he was "full of blood." Mr. Thibodeaux attempted to return to the store, but was hit from behind again. He was knocked down, stomped, and kicked in the neck, shoulders, and back.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we note one error patent concerning the Defendant's habitual offender proceeding.

The record in this case does not indicate that the Defendant was advised of his right to remain silent, his right to a hearing, and his right to have the State prove its case against him.[1] In *State v. Coleman,* 96-525, pp. 12-13 (La.App. 3 Cir. 10/7/98), 720 So.2d 381, 387, this court explained in pertinent part:

> Although the right to remain silent is not specifically set forth in La.R.S. 15:529.1, in *State v. Johnson*, 432 So.2d 815 (La.1983), *writ granted on other grounds*, 438 So.2d 1113 (La.1983); *appeal after remand*, 457 So.2d 1251 (La.App. 1 Cir.1984), *appeal after remand*, 471 So.2d 1041 (La.App. 1 Cir.1985), the Louisiana Supreme Court held this statute clearly recognizes the defendant has the right to remain silent, and the statute implicitly provided defendant should be advised by the court of his right to remain silent. The court in *Johnson*, relying on *State v.*

---

[1]The record indicates that at the opening of the August 7, 2008 habitual offender proceeding, the prosecutor stated, "I would like to - - if you could just arraign him on the bill." Defense counsel indicated he had already filed a response and that they would enter a denial of all charges. From these comments, it appears that the Defendant had not been previously arraigned on the habitual offender bill.

*Martin*, 427 So.2d 1182 (La.1983), further stated La.R.S. 15:529.1(D) specifically provides defendant shall be advised of his right to a formal hearing and to demand that the state prove its case.

This court has found that the failure to advise a defendant of the right to remain silent and to have the State prove its case against him is harmless when the defendant is adjudicated a habitual offender after a full hearing, and the defendant does not testify or acknowledge his status as a habitual offender. *See State v. Alexander*, 05-276, 05-277 (La.App. 3 Cir. 11/2/05), 916 So.2d 303. However, in the present case, defense counsel stipulated as to the Defendant's identity for the prior convictions.

In *State v. Harris*, 95-900, pp. 1-2 (La. 5/19/95), 654 So.2d 680, the supreme court, reviewing the grant of an application for post-conviction relief, stated:

> Admissions of identity at a multiple offender hearing implicate the defendant's Fifth Amendment privilege against self-incrimination. *State v. Johnson*, 432 So.2d 815 (La.1983). Nevertheless, multiple offender proceedings "simply should not be equated (at least for purposes of determining the validity of an admission) to trials of guilt or innocence." *State v. Martin*, 427 So.2d 1182, 1185 (La.1983). This Court has therefore declined to adopt as a constitutional prerequisite to a valid admission of identity at a multiple offender proceeding a procedure analogous to the *Boykin* colloquy which must accompany a valid plea of guilty. *Id.*, 427 So.2d at 1185, n. 7. In the absence of any allegation or showing that the admission was involuntary, *compare State v. Johnson*, *supra*, the availability of post-conviction relief turns on whether the proceedings as a whole accorded the petitioner fundamental fairness and due process of law. *See*, *Holloway v. Lynaugh*, 838 F.2d 792 (5th Cir.), [*cert. denied*], 488 U.S. 838, 109 S.Ct. 104, 102 L.Ed.2d 80 (1988); *State v. Firmin*, 522 So.2d 1181 (La.App. 4th Cir.), [*writ denied*], 532 So.2d 759 (La.1988).
>
> In this case, the prosecution introduced and filed into evidence a sworn affidavit from the Department of Corrections to prove that petitioner, Roy Harris, was the same person who was previously convicted of the predicate felonies which led to the multiple bill. Defense counsel made his stipulation in open court and in the presence of the petitioner. A complete review of the transcript reveals that the petitioner was given a fundamentally fair hearing wherein the state proved the prior felony convictions.

3

In *State v. Samuel*, 08-100 (La.App. 3 Cir. 5/28/08), 984 So.2d 256, *writ denied*, 08-1419 (La. 2/20/09), 1 So.3d 493, *writ denied*, 08-1487 (La. 2/20/09), 1 So.3d 495, this court dealt with an issue similar to that presented in this case. At defendant Samuel's habitual offender hearing, he testified, acknowledging his prior convictions, without being advised of his right to remain silent. This court found that the defendant's testimony was voluntary, the defendant was represented by counsel, and a full habitual offender hearing was held. Accordingly, it held that the trial court's failure to advise the defendant of his right to remain silent was harmless and that the defendant was afforded a fair hearing.

In the present case, the State presented documentary evidence to prove the existence of the prior convictions. To prove identity, it presented the testimony of Mr. Douglas Edney, with the Louisiana Division of Probation and Parole, who testified that he had supervised the Defendant upon his release for "good time parole supervision" for his prior conviction of distribution of counterfeit cocaine. He identified the Defendant as the person that he had previously supervised. The State then presented evidence of the Defendant's identity for the prior convictions through an expert in fingerprint analysis and through documentary evidence. According to the record, the Defendant stipulated as to his identity on the three prior convictions and also stipulated as to the fingerprint evidence presented by the State. Subsequent to the presentation of this evidence, the trial court found that the State bore its burden of proof regarding identity, and it ultimately found the Defendant to be a fourth felony offender.

Although the record before this court does not reflect that the Defendant was advised of his rights, there is no indication in the record that the stipulation was

4

involuntary. The Defendant was represented by counsel, and he was adjudicated an habitual offender after a full hearing at which the State presented evidence to prove his habitual offender status. Therefore, we find that the Defendant was afforded a fundamentally fair hearing and that the error was harmless.

## ASSIGNMENT OF ERROR

In his only assignment of error, the Defendant contends that the evidence was not sufficient to convict him of the charge of second degree battery or any responsive verdict thereto.

The sole issue before this court is the Defendant's identity as the perpetrator. The supreme court has explained:

> [W]hen the key issue is the defendant's identity as the perpetrator, rather than whether the crime was committed, the State is required to negate any reasonable probability of misidentification. *State v. Weary*, 03-3067 (La.4/24/06), 931 So.2d 297[, *cert. denied*, 549 U.S. 1062, 127 S.Ct. 682 (2006)]; *State v. Neal*, 00-0674 (La. 6/29/01), 796 So.2d 649[, *cert. denied*, 535 U.S. 940, 122 S.Ct. 1323 (2002)]. Positive identification by only one witness is sufficient to support a conviction. *Weary*, 03-3067 at p. 18, 931 So.2d at 311; *Neal*, 00-0674 at p. 11, 796 So.2d at 658; *State v. Mussall*, 523 So.2d 1305, 1311 (La.1988). It is the factfinder who weighs the respective credibilities of the witnesses, and this court will generally not second-guess those determinations. *State v. Bright*, 98-0398, p. 22 (La.4/11/00), 776 So.2d 1134, 1147.

*State v. Hughes*, 05-992, pp. 5-6 (La. 11/29/06), 943 So.2d 1047, 1051.

Mr. Thibodeaux testified that the Defendant was in the store with Ms. Thomas; however, he did not see the Defendant hit him and did not identify the Defendant in a photographic line-up. Mr. Thibodeaux testified that he did not tell the police that the Defendant was the person with Ms. Thomas because he did not know the Defendant's name. Additionally, Mr. Thibodeaux did not describe the man to the police. However, he made an in-court identification of the Defendant as the man who was with Ms. Thomas.

5

Ms. Tina Robin, an eyewitness who was in the parking lot of Wal-Mart at the time this incident occurred, testified at trial and was asked if she could identify the man she saw hit Mr. Thibodeaux, and she responded as follows:

> I can identify stature and shape, and almost be positively certain that that is him[,] and he is in this courtroom today. By the facial features, I really didn't get a look at the face because it was happening all so fast and I was hollering "Hey, y'all, stop that. Stop that." I mean, you know, it was -- it just -- It happened real fast, and it just -- it just wasn't something that -- it wasn't right.

She further described the man as a black male wearing jean shorts and a blue and white sport shirt who was between five foot four and five foot six inches tall with a stout stature. She testified that the Defendant's body style was consistent with the man she saw on July 12, 2004.

Ms. Tessie Devillier, another eyewitness who was in the Wal-Mart parking lot at the time of the incident, also testified and described the man who struck Mr. Thibodeaux as a dark-complected black male with a nice build who had braids in his hair and strong facial features. The man wore jean shorts and a white jersey. In court, Ms. Devillier identified the Defendant as the man who struck Mr. Thibodeaux. She stated that she gave a statement to police, but did not tell them what the man looked like because she was shaken up. Ms. Devillier explained that she has anxiety attacks which cause her to panic. Ms. Devillier further testified as follows:

> Q    Okay. Now, if you had some striking description of this gentleman, being the law-abiding good samaritan that you are, you probably would have told the police about it at the time?
>
> A    Not at the time. If you're trying to fight off panic. Not -- If you don't have panic attacks, you have no idea what they're like.
>
> Q    Tell us what they're like, ma'am.
>
> A    Well, they're like they cut off your breath. They make you feel shaky.

6

Q    Okay.

A    They make you feel jittery.

Q    Okay.

A    You know, it's -- it's like you've [sic] having a mini heart attack.

Q    Okay.

A    You know, and something's going on that you can't stop.

Q    Terrible, right?

A    Yeah.

Q    Okay.  And while you're feeling panicky and jittery, and losing your breath, --

A    I'm not losing my mind and my sight.

Q    -- all these things, somehow you manage to remember details to such a degree that you can tell this jury, three-and-a-half (3-1/2) years later --

A    Yes.

Q    -- that Carl Gobert was the person who did this?

A    Yes.

Q    But you didn't manage to do it on the night --

A    I told the police that they could call me if they needed another statement.  I was tired.  It was at midnight, and I was ready to go home. I left my phone number and told them that if they needed to contact me further, they could.

Q    Okay.

A    I would even identify him in a line-up.

Q    Okay.  And you were never called about a line-up?

A    (Witness shakes head negatively.)

Detective Robert Vincent testified that Ms. Thomas gave him a statement in

7

May of 2005 wherein she stated that the Defendant was involved in the attack on Mr. Thibodeaux. As a result of Ms. Thomas's statement, Detective Vincent prepared a photographic line-up and presented it to another eyewitness, Ms. Justina Iner. Ms. Iner identified the Defendant as the man who struck Mr. Thibodeaux.

Ms. Iner, an employee of the district attorney's office, testified that the man who struck Mr. Thibodeaux ran down the sidewalk and kept looking back. She then stated, "I don't know if he's looking at me or if he's looking to see where the lady with the shopping cart is, but he's looking back at me." Ms. Iner did not describe the man in her statement to police; however, she testified that police did not ask her what the man looked like. She testified that he wore jean shorts and a white jersey.

Ms. Iner testified that she had previously identified the Defendant in a photographic line-up after looking at the photos for five minutes. She also made an in-court identification of the Defendant as the man she saw strike Mr. Thibodeaux.

Ms. Thomas was living with the Defendant at the time of trial. She was asked if she remembered pleading guilty in August of 2005 to an amended charge of unauthorized use of a movable and agreeing to testify about the Defendant's involvement in the incident at issue. Ms. Thomas testified that she probably went to court under the influence of alcohol and drugs.

Ms. Thomas did not remember giving a statement to Detective Vincent on May 16, 2005. She was questioned about the statement as follows:

> Q   All right. You gave the statement and this is what it says (Reading): I went to Walmart, took some things, tried to leave from the store. A man stopped me, and my boyfriend hit the man. The man pulled me and Gobert hit him with his fist. The man fell on the floor. Gobert took off running. After he hit the man, I left walking in the front of the store and the police stopped me and flipped me on the ground.
> Do you remember writing this?

8

A      At the time, I don't remember.

Q      This is what happened, isn't this correct?  This is what you told us and we developed Mr. Gobert –

A      My -- my boyfriend wasn't Mr. Gobert.

Q      Why do you have Mr. Gobert identified in this?

A      Did this say -- You said that my boyfriend, then Mr. Gobert --

Q      It says right here --

A      My boyfriend, then it said Mr. Gobert.

Q      It says (Reading):  And Gobert hit him with his fist.  The man fell on the floor. Gobert took off running.

A      Mr. Vincent was trying to tell me how to write this here, or something.

Q      So you're telling us that you lied to the court?

A      I lied to the court, when?

Q      When you came in front of this court and you pled guilty and you agreed that you were going to testify --

A      In the front of who?

Q      In front of the other judge that you pled guilty to.

A      I probably was under the influence of alcohol and drugs.

Q      So that's your excuse today?

A      I didn't -- I'm just telling you what I use, I use drugs and I get drunk every day.

Ms. Thomas testified that she was not with the Defendant on the night in question.

The Defendant asserts that Mr. Thibodeaux, Trooper James Benoit,[2] and Ms.

Robin could not identify him.  He further asserts that Ms. Devillier's identification

---

[2]On the night of the incident, Trooper Benoit, then employed by the Lafayette City Police Department, was working security at Wal-Mart.

9

was unreliable because she did not describe the attacker to police at the time of the incident due to a panic attack, and her in-court identification occurred three and one-half years after the incident. Additionally, it took Ms. Iner five minutes to select him from a photographic line-up. The Defendant further asserts that the single eyewitness's testimony, so long after the incident, leaves room for reasonable doubt as to his identity.

Mr. Thibodeaux testified that the Defendant was the man in Wal-Mart with Ms. Thomas. Ms. Robin testified that the Defendant had the same stature as the man who struck Mr. Thibodeaux. Ms. Devillier made an in-court identification of the Defendant. The Defendant was positively identified by Ms. Iner in a photographic line-up and at trial. Additionally, Ms. Thomas gave a statement to the police indicating that the Defendant struck Mr. Thibodeaux. Therefore, we find that there is sufficient evidence in the record to find that the jury was reasonable in its determination that the Defendant was the person who committed the offense of second degree battery. Accordingly, this assignment of error lacks merit.

## DISPOSITION

The Defendant's habitual offender conviction is affirmed.

**AFFIRMED.**