# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 16-869

**STATE OF LOUISIANA**

**VERSUS**

**ROMAN FORD**

**********

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, DOCKET NO. 15-1229
HONORABLE VINCENT JOSEPH BORNE, DISTRICT JUDGE

**********

**SYLVIA R. COOKS**
**JUDGE**
**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, and Elizabeth A. Pickett, Judges.

**AFFIRMED, AS AMENDED.**

**Paula C. Marx**
**Louisiana Appellate Project**
**P. O. Box 80006**
**Lafayette, LA 70598-0006**
**Telephone:  (337) 991-9757**
**COUNSEL FOR:**
    **Defendant/Appellant – Roman Ford**

**Winston White, Assistant Attorney General**
**Louisiana Department of Justice**
**P.O. Box 94005**
**Baton Rouge, LA 70804**
**Telephone:  (225) 326-6200**
**COUNSEL FOR:**
    **Plaintiff/Appellee - State of Louisiana**

**COOKS, Judge.**

## FACTS AND PROCEDURAL HISTORY

Courtney LeBlanc, a Lieutenant at the Iberia Parish Jail, participated in the October 11, 2014 shake-down of Defendant, Roman Ford's cell. Lieutenant LeBlanc testified that two inmates complained of Defendant having a sharp object in his cell and complained that Defendant was making threats. When Lieutenant LeBlanc and Deputy Keith Moneaux went to check the cell, the Defendant and three other inmates were in the cell block. According to Lieutenant LeBlanc, the following happened when she and the other deputy entered the cell block:

> Deputy Moneaux and myself both entered. I had each inmate one at a time get out of their bunk and put their hands behind their head and step out one at a time. Mr. Ford was the last one in the cell. He was on the bottom bunk closest to the restroom. Whenever he - - As the rest were entering - - The information was given was that he was the one who had the "shank"; so initially I focused on him just to see if there was anything else and to pay attention to that area. I did see him attempt to reach on his side. He was covered with his blanket, but I could see his hand under the blanket and he looked he [sic] was trying to grab for some type of item or something on his mat. He was the last one it [sic]. It was Deputy Moneaux and myself in there. And he stood up and asked for the restroom. I told him he could not go to the restroom at the time because history is [sic] the jail is that, if there is contraband or something, people will try to flush it to get rid of it. He was denied the restroom. The second - - We told him "no". He was standing up by the restroom and we heard - - well, I heard what sounded like a metal object hit the floor. [A]nd the second he was far enough away from it, myself and Deputy Moneaux grabbed him and escorted him out the cell. Deputy Moneaux went straight to where we - - where I heard the item fall and he picked up the "shank".

Lieutenant LeBlanc described the shank as being what appeared to be a screw that had been taken out of the floor and sharpened.

Deputy Keith Moneaux testified that when he walked into the cell, he focused on Defendant since he was the inmate accused of having the shank. When Deputy Moneaux entered the cell, Defendant was fidgety and moving around on the mattress. Defendant was told to exit the cell but stated that he needed to use the restroom first. According to Deputy Moneaux, Defendant actually entered the

2

bathroom stall. The officers told him he needed to wait and to exit the bathroom area, immediately. As Defendant was exiting the bathroom area Deputy Moneaux heard something hit the floor. When asked what he heard specifically, Deputy Moneaux testified:

A. It was the actual "shank".

Q. Describe the noise you heard.

A. Like a "ping". It hit like a drain on the floor in the stall.

Q. Who else was in the cell when that occurred?

A. It was just me and Mr. [sic] LeBlanc.

Q. Any other inmates?

A. No, sir. The other inmates were already exited the dorm.

Q. What did, what did you do at that point?

A. We actually got Mr. Roman Ford out and then I went back immediately and found the object that he had dropped.

On August 25, 2015, Defendant was charged by bill of information with one count of introducing or possessing contraband in a municipal or parish jail, a violation of La.R.S. 14:402(E). Defendant entered a plea of not guilty to the charge on September 8, 2015. A jury trial took place on January 27, 2016, and Defendant was found guilty as charged. Thereafter, on February 1, 2016, Defendant was charged as a habitual offender and entered a plea of not guilty. On May 12, 2016, the trial court found the Defendant was a fourth felony offender. On that same date, the trial court sentenced Defendant to five years at hard labor on the underlying charge of possessing contraband in a municipal or parish jail. Defendant filed a Motion for Appeal, which was granted.

On August 2, 2016, the trial court vacated the previous sentence and sentenced Defendant as a fourth felony offender to twenty years at hard labor without benefit of probation, parole, or suspension of sentence.

3

Pursuant to a motion filed by the District Attorney's Office, on September 12, 2016, the trial court ordered the 16th Judicial District Attorney's Office recused. The Attorney General of the State of Louisiana was notified of the need to appoint counsel. By letter dated October 28, 2016, the Attorney General accepted the appointment.

Defendant is now before this court alleging three assignments of error, one of which is also discussed in the error patent section. For the reasons that follow, we affirm Defendant's conviction and amend the sentence imposed.

## ERRORS PATENT and ASSIGNMENT OF ERROR NO. 2

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find one error patent that is also assigned as error number two in Defendant's brief.

The court minutes reflect that the court imposed a twenty year hard labor sentence on Defendant without any restriction of benefits. However, the sentencing transcript indicates that the trial court imposed Defendant's twenty year sentence without the benefit of parole, probation, or suspension of sentence. "[W]hen the minutes and the transcript conflict, the transcript prevails." *State v. Wommack*, 00-137, p. 4 (La.App. 3 Cir. 6/7/00), 770 So.2d 365, 369, *writ denied*, 00-2051 (La. 9/21/01), 797 So.2d 62. The trial court improperly denied parole eligibility on Defendant's habitual offender sentence imposed for his conviction of introducing into or possessing contraband in any municipal or parish prison or jail, a violation of La.R.S. 14:402. Although Section G of La.R.S. 15:529.1 requires habitual offender sentences to be imposed without the benefit of probation or suspension of sentence, it does not authorize the trial court to deny parole eligibility. "[T]he restrictions on parole eligibility imposed on multiple offender sentences under La.R.S. 15:529.1 'are those called for in the reference statute.'" *State v. Tate*, 99-1483, pp. 1-2 (La. 11/24/99), 747 So.2d 519, 520 (citation

4

omitted). The applicable penalty provision for introducing into or possessing contraband in any municipal or parish prison or jail does not authorize the trial court to impose any portion of the sentence without the benefit of parole. La.R.S.14:402(G). Therefore, Defendant's sentence must be amended to delete the denial of parole eligibility and the trial court is instructed to make an entry in the court minutes reflecting that change. *See State v. Barfield*, 11-515 (La.App. 3 Cir. 11/23/11), 81 So.3d 760, *writ denied*, 11-2818 (La. 4/13/12), 85 So.3d 1246.

## ASSIGNMENT OF ERROR NO. 1

In this assignment of error, Defendant contends the trial court erred in denying him the right to present evidence relating to the events leading up to the shakedown of his cellblock. Defendant argues that evidence of these events was relevant to this case, and the trial court's denial of admission of this evidence violated the Defendant's right to present a defense.

During the cross-examination of Lieutenant LeBlanc, Defendant asked Lieutenant LeBlanc if there had been issues with Shane Norman (the initial complainant about the shank) causing a ruckus in the cell. The State objected, stating the evidence was not relevant. Defendant's counsel responded:

> It is part of her report. One the [sic] reasons they went, not just to investigate the shank, is because Norman and Romero were punching up on a mattress on the wall causing some ruckus. So it is in her report and part of the reason they went was to investigate that.

The State argued the ruckus related to an earlier complaint and had nothing to do with the shank incident. After having the jury escorted out of the courtroom, the trial court stated that it would allow the question and answer and then make a ruling.

The following colloquy took place between defense counsel and Lieutenant LeBlanc out of the jury's presence:

> Q. With regards to the booking cell that Mr. Roman Ford was being housed in, there was an issue that y'all were - - that had been

5

made that y'all were going to investigate regarding, or was there an issue regarding Shane Norman causing some ruckus because he was boxing up against the mattress?

A. I do remember that. I believe that they had called about or we had heard a noise. That was previously before we entered the cell. They were making noise. And two or three of the deputies went to investigate and they saw that he had his mat - - wrapped up and tied his mattress and he was just boxing it. They were told to "cease and desist", or stop doing that, which they did, and we had no further issues with that. But that - - I don't know if that's what you are asking. That wasn't the reason we had to enter the cell.

Q. Do you recall your statement that was made on October 11th?

A. The report?

Q. Yeah.

A. Yes, ma'am.

Q. And in making that statement you talk about the complaints made by inmates, the alleged complaints about Roman Ford having a sharp object, then you talk about an altercation.

A. Uh-hum. (Affirmative response.)

Q. And they were told about what was happening. Do you recall in your report you write, "So all of the above mentioned deputies went to do a shake down."

A. Okay?

Q. So the shake down wasn't a result of those two (2) different issues?

A. No, ma'am. The report that had to deal with the shank happened to be a summary, I guess, of the different issues that we were having that entire night of the outcome of that. There wasn't a separate report. Just for instance, the incident concerning the shank and the investigation for that.

Q. Do you recall at what time the complaint was made about the other commotion that was going on in that cell?

A. No, ma'am. I don't recall the time.

. . . .

Q. Do you recall at what time the complaints were made regarding the other issues that were going in the cell with Shane Norman?

A. No, ma'am.

6

Q.     Okay. Do you recall what time the complaints were made with regards to the sharp object that they were alleging Roman Ford had?

A.     No, ma'am.

When the trial court asked Lieutenant LeBlanc if the issue regarding Mr. Norman's punching was a reason to enter the cell, Lieutenant LeBlanc responded, "No, sir." The trial court then ruled that it would sustain the State's objection for the following reasons:

> - - based upon the fact that there is some mention of that. It has no relevancy. Her testimony is that she acknowledged that there was is [sic] some incident, but there is no - - the testimony is that that was not a basis to enter their cell, as they did with regards to the evidence in question in this case.

Defense counsel then engaged in the following colloquy with the trial court in response to the ruling:

MISS DEMAHY:

> With the basis - - We are also saying that the issues in that cell with other inmates is also relevant to this case.

THE COURT:

> Okay?

MISS DEMAHY:

> Because I mean it could be other inmates in this situation that have a shank. And to say that nothing else was going on in that cell, other them [sic] going to look for a shank, is giving the jury a swayed idea of what actually took place in that cell in the days leading up to their shake down.

After hearing defense counsel's argument, the trial court reiterated its finding that the evidence was not relevant:

> Okay. I have ruled on that issue. Based upon the fact that the testimony, although you have drawn out there this is this [sic] other issue, the testimony was that this witness testified pursuant to your questioning that th [sic] only reason for entering the cell, which was entering the cell, was because of the complaint that was consistent with, I think, the prior testimony and the testimony of this witness was with regards to the complaint about the shank, which has been testified to, to other extraneous evidence that you have drawn out. It

7

has no relevancy in this Court's position based upon the objection to that issue.

And she said that issue was handled without going into the cell. That is her testimony.

When defense counsel questioned whether the trial court was finding the evidence irrelevant, the following colloquy ensued:

THE COURT:

You are trying to get in evidence - - It is my understanding you are trying to get her to answer questions about Shane Norman and the problems with Shane Norman. That was the - -

MISS DEMAHY:

Or just the problem that they had other issues that took place in that cell prior to the shake-down involving other inmates. I think that is relevant to the case.

THE COURT:

Okay?

MISS DEMAHY:

So that is why I am asking her questions regarding any other issues that they had in that cell prior to the shake down.

THE COURT:

And the objection was that, with regards to Shane Norman, the issue is not relevant. I allowed testimony to see if that was part of the reason that they went into the cell. The evidence has been that it was not. So based upon the totality of that evidence that is before me, I'll sustain the objection by the State as to your further questioning about an issue about Shane Norman that has nothing to do with the shank and that has been testified to was not a reason to enter into the cell, and that has been testified to was resolved by speaking with him without entering the cell. That is what I have heard from this witness. So that is the ruling of the Court.

MISS DEMAHY:

Okay.

THE COURT:

So with that, all of this has been done outside the presence of the jury.

*Legal Analysis*

It is well-settled that a defendant has the constitutional right to present a defense, but that right does not come without limits: "A defendant in a criminal case is constitutionally guaranteed the right to present a defense. However, this guarantee does not grant the right to the admission of any type of evidence." *State v. Clark*, 95-1046, p. 23 (La.App. 3 Cir. 3/6/96), 670 So.2d 624, 636, *writ denied*, 96-861 (La. 9/20/96), 679 So.2d 431 (citing *State v. Hill*, 610 So.2d 1080 (La.App. 3 Cir. 1992)). While being mindful of a defendant's right to present a defense, a trial court must exercise reasonable control over the admission of evidence:

> La.Code Evid. art. 103 states that "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected . . . . " La.Code Evid. art. 611(A)(2) states, in part, that "[t]he court . . . shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to . . . [a]void needless consumption of time . . . ." In *State v. Ellis*, 94-599, p. 22 (La.App. 5 Cir. 5/30/95), 657 So.2d 341, 353, the court noted that "[t]he questions of relevancy and admissibility are within the wide discretion of the trial judge. His determinations regarding relevancy and admissibility should not be overturned absent a clear abuse of discretion. *State v. Mosby*, 595 So.2d 1135 (La.1992); *State v. Mayeaux*, 570 So.2d 185 (La.App. 5th Cir. 1990), *writ denied*, 575 So.2d 386 (La.1991)."

*Id.* at 638-39.

Recently, the supreme court stated the following regarding a defendant's right to present his defense versus the admission of irrelevant evidence:

> However, the Supreme Court has subsequently made clear that the fundamental right to present a defense does not require the trial court to admit irrelevant evidence or evidence with such little probative value that it is substantially outweighed by other legitimate considerations. In *Holmes v. South Carolina*, 547 U.S. 319, 126 S.Ct. 1727, 164 L.Ed.2d 503 (2006), the Court stated that "while the Constitution thus prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice,

confusion of the issues, or potential to mislead the jury." 547 U.S. at 326, 126 S.Ct. 1727.

*State v. Coleman*, 14-402, p. 26 (La. 2/26/16), 188 So.3d 174, 197, *cert. denied*, ___ U.S. ___, 137 S.Ct. 153 (2016). The supreme court also stated that even if evidence is erroneously excluded, the error would be subject to the harmless error standard. *Id.*

As for the relevancy of the evidence in the present case, defense counsel asserts the evidence of the "prior ruckus" would have given the jury a complete picture of what transpired in the cell leading up to the shakedown. Defense counsel implies that other inmates involved in the ruckus could have had a shank. As stated by defense counsel, "Relevant evidence is that which tends to make the existence of a fact at issue more probable or less probable. La. Code Evid. art. 401." *State v. Jeanlouis*, 96-474, p. 6 (La.App. 3 Cir. 11/6/96), 683 So.2d 1355, 1360, *writ denied*, 96-2822 (La. 4/18/97), 692 So.2d 446. The trial court, however, found there was no evidence that the prior ruckus had anything to do with the shank; thus, the evidence was not relevant.

Considering the abuse of discretion standard as to a trial court's finding of relevance, Defendant has not shown the trial court abused its discretion in determining the evidence was not relevant. There was no clear testimony that the ruckus happened near the time the shank was found or that the ruckus had anything to do with the shank. Whether or not anyone else possessed the shank at some point does not change the fact that the Defendant was found in possession of the shank.

Furthermore, even if the evidence was erroneously excluded, we find its exclusion would be harmless. The testimonies of both Lieutenant LeBlanc and Deputy Moneaux support a finding that the Defendant possessed a shank while in his cell. Louisiana Revised Statute 14:402(E) provides, in pertinent part:

It shall be unlawful to possess or to introduce or attempt to introduce into or upon the premises or any municipal or parish prison or jail or to take or send or attempt to take or send therefrom, or to give or to attempt to give to an inmate of any municipal or parish prison or jail, any of the following articles which are hereby declared to be contraband for the purpose of this Section, to wit:

. . . .

(6) Any firearm or any instrumentality customarily used as a dangerous weapon, including explosives or combustibles, except through regular channels as authorized by the officer in charge of any institution herein, or any plans for the making or manufacturing of such weapons or devices.

It appears from Defendant's opening statement, the questioning of the witnesses, and Defendant's brief on appeal, that he does not contest the fact that the shank found in his cell was a dangerous weapon. The only question at trial was whether the Defendant was the person who possessed the shank. Although defense counsel made a vague statement that other inmates could have had the shank during the ruckus, no specific testimony was offered that Defendant was holding the shank for someone else or that the shank actually belonged to someone else. Considering the officers' testimonies, the evidence was sufficient to support the jury's finding that Defendant possessed the shank. Therefore, even if the trial court erroneously excluded evidence of the prior ruckus, the error is harmless.

## ASSIGNMENT OF ERROR NO. 3

In this assignment, Defendant asserts his right to counsel was violated by his lack of representation at the habitual offender arraignment. According to the minutes of the habitual offender arraignment, Defendant's counsel was not present. The minutes indicate after the State read the habitual offender bill, the Court "on behalf of the defendant" entered a plea of not guilty. The record does show Defendant was represented by counsel at his adjudication hearing and sentencing.

This court has held the failure to advise a defendant of his rights to a hearing and to be advised of the State's burden of proof is harmless where he is adjudicated

11

a multiple offender after a full hearing and he does not testify or acknowledge his status as a habitual offender. *State v. Pitre*, 04-1134 (La.App. 3 Cir. 2/9/05), 893 So.2d 1009; *State v. Beverly*, 03-1348 (La.App. 3 Cir. 3/3/04), 867 So.2d 107); *State v. Gobert*, 09-607 (La.App. 3 Cir. 12/9/09), 24 So.3d 1013 at 1015, *writ denied*, 09-2830 (La. 6/18/10), 38 So.3d 321]. In *State v. Tarver*, 02-973, 02-974, 02-975 (La.App. 3 Cir. 3/12/03), 846 So.2d 851, *writ denied*, 03-1157 (La. 11/14/03), 858 So.2d 416, this court found that arraignment for an underlying charge was not a critical stage requiring the presence of counsel. In reaching this finding, this court noted that in Louisiana, there is no confrontation of witnesses or presentation of evidence at arraignment. *Tarver*, 846 So.2d at 857. Additionally, we noted that available defenses are not lost if not pled at arraignment, and motions to quash are required to be filed after arraignment. *Id.* This court also distinguished a case wherein the defendant was unrepresented at both arraignment and trial. *Id.* (distinguishing *State v. Fraychineaud*, 620 So.2d 338 (La.App. 5 Cir. 1993)).

Likewise, the habitual offender arraignment in the present case should not be considered a critical stage at which counsel was required because no evidence was admitted or a guilty plea entered that could have undermined Defendant's constitutional rights. Louisiana Revised Statute 15:529.1(D)(1)(a) provides:

> If, at any time, either after conviction or sentence, it shall appear that a person convicted of a felony has previously been convicted of a felony under the laws of this state, or has been convicted under the laws of any other state, or of the United States, or of any foreign government or country, of a crime, which, if committed in this state would be a felony, the district attorney of the parish in which subsequent conviction was had may file an information accusing the person of a previous conviction. Whereupon the court in which the subsequent conviction was had shall cause the person, whether confined in prison or otherwise, to be brought before it and shall inform him of the allegation contained in the information and of his right to be tried as to the truth thereof according to law and shall require the offender to say whether the allegations are true. If he denies the allegations of the information or refuses to answer or remains silent, his plea or the fact of his silence shall be entered on the

12

record and he shall be given fifteen days to file particular objections to the information, as provided in Subparagraph (b) of this Paragraph. The judge shall fix a day to inquire whether the offender has been convicted of a prior felony or felonies as set forth in the information.

As stressed in *Tarver*, there is no confrontation of witnesses or presentation of evidence at the habitual offender arraignment. Additionally, there is no provision stating that available defenses are lost if not pled at the habitual offender arraignment, and objections to the charges must be filed after arraignment. Finally, a not guilty plea was entered on behalf of the Defendant at his arraignment, and the Defendant was subsequently represented by counsel at his adjudication hearing. Thus, we find the habitual offender arraignment in the present case was not a critical stage requiring the presence of counsel.

## DECREE

For the foregoing reasons, Defendant's conviction is affirmed. Defendant's sentence is affirmed, but amended to delete the denial of parole eligibility, and the trial court is ordered to enter a minute entry reflecting this change.

**AFFIRMED, AS AMENDED.**