STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2019 KA 0409

STATE OF LOUISIANA

VERSUS

KIRBY THOMAS

Judgment Rendered: OCT 2 5 2019

* * * * *

On Appeal from the
23rd Judicial District Court
In and for the Parish of Assumption
State of Louisiana
Trial Court No. 17-123

Honorable Jason Verdigets, Judge Presiding

* * * * *

Ricky Babin
District Attorney
Napoleonville, LA
Lindsey D. Manda
Assistant District Attorney
Gonzales, LA

Jeff Landry
Attorney General
Colin Clark
J. Taylor Gray
Assistant Attorneys General
Baton Rouge, LA

Mary Constance Hanes
New Orleans, LA

Attorneys for Appellee,
State of Louisiana

Attorney for Defendant-Appellant,
Kirby Thomas

\

* * * * *

BEFORE: HIGGINBOTHAM, PENZATO, AND LANIER, JJ.

WICH Dissent with Reasons

Penzato, J., agrees in part, concurs in part and assigns reasons

**HIGGINBOTHAM, J.**

Defendant, Kirby Thomas, was charged by bill of indictment with two counts of possession with intent to distribute cocaine, violations of La. R.S. 40:967(A) (counts one and two); attempted second degree murder, a violation of La. R.S. 14:27 and La. R.S. 14:30.1 (count three); and being a convicted felon in possession of a firearm, a violation of La. R.S. 14:95.1 (count four). Defendant pled not guilty to all counts. Before trial commenced, the State amended count one to allege possession of more than 28 grams, but less than 200 grams, of cocaine, a violation of La. R.S. 40:967(C), and dismissed count two. After a trial by jury, defendant was found guilty as charged of amended count one and count four, and guilty of the responsive offense of attempted manslaughter in violation of La. R.S. 14:27 and La. R.S. 14:31, for count three.[1] The verdicts for counts one and four were 11-1, with a unanimous verdict on count three. The trial court imposed a term of five years imprisonment at hard labor on count one, to be served concurrently with consecutive terms of 20 and 10 years imprisonment at hard labor for counts three and four respectively. Defendant now timely appeals. For the following reasons, we affirm defendant's convictions, but remand for resentencing.

## STATEMENT OF FACTS

On January 5, 2017, several people attended a repass[2] following the funeral of Meagan Washington. Lashon Brown was barbequing chicken at the repass. After Brown was finished barbequing, defendant asked him for a ride to the liquor store to purchase alcohol. Brown offered to share the cost of a bottle of cognac with the defendant. Brown left the repass to go to the liquor store to purchase a bottle of cognac, and then he returned to the repass. Upon his return, he and defendant began talking "about some old days" and got into a heated argument. Defendant blamed Brown for

---

[1] The charged counts were listed in a different order on the jury verdict form, but for purposes of this opinion, we will refer to the charged counts as listed in the indictment.

[2] "Repass" is a regional colloquial form of the word "repast," which is a social gathering for collective mourning and remembrance held after a funeral ceremony.

2

taking something from him, and Brown denied any wrongdoing. The disagreement did not become physical, though at one point defendant said he would "put that chopper[3] on" Brown. After the argument, defendant asked Brown for a ride home, which Brown denied.

On leaving the repass, Brown drove Chaquille Landry home. After dropping Landry off, Brown reconsidered his argument with defendant and because he felt "[they] were bigger than that[,]" he called defendant and proposed resolving the matter. Brown also called his cousin Nehemiah Jones and described the argument the two men had at the repass. Brown explained to Jones that he was going to defendant's house to continue the discussion in order to resolve it. Brown acknowledged that he asked Jones to meet him there. Brown said he did not know that Jones would bring a gun nor did he ever see Jones with a gun that night.

Brown drove to defendant's home and parked on the street in front of defendant's driveway. Defendant was already standing outside. Brown observed an AR-15 propped against defendant's home. Brown testified he and defendant began to resolve their conflict when, about ten minutes after Brown's arrival, Jones pulled behind defendant's truck. Brown shook hands with defendant, told defendant he "got" Jones, and that he and Jones would leave. As Brown walked to meet Jones near his vehicle, Brown heard gunshots coming from behind him and realized that he had been shot. Brown was shot several times in the back, buttocks, legs, and hip. Brown acknowledged that Jones was shot immediately before him. Brown testified that defendant walked up to him and told him he was going to spare Brown's life because he had children with defendant's cousin. Brown conceded, and investigators confirmed, that his truck was still running both during and after the encounter.

---

[3] "Chopper" is a slang term used for a semi-automatic or automatic rifle, such as an AR-15 or AK-style weapon.

3

Almost immediately thereafter, defendant asked his neighbor, Brittany Wiggins, a sergeant with the Assumption Parish Sheriff's Office, to "call [her] people," because there were two men lying shot in his driveway. Defendant told Sgt. Wiggins and another responding deputy that the shooter or shooters had fled either through a nearby field or in opposite directions on the nearby highway. Defendant told investigators he was inside when the shooting occurred and did not know who was there or who did the shooting. He did not tell responding officers that he acted in self-defense or that he was in fear for his life. Brown, on the other hand, told deputies that defendant shot him with a "chopper." Deputies found a 9mm firearm and car keys under Jones's body.

Jones's girlfriend testified at trial that she was with him when he received a call from Brown after Jones returned home from the repass. She explained that because the call was on speaker, she understood that Brown saw that defendant "got a chopper in his hand." She saw Jones leave in her car with the intention of getting Brown and bringing him back, but she said that at no point did Jones ask her for a gun. She did concede that she kept a 9mm handgun in her car.

A search warrant for defendant's house was obtained. Numerous spent casings were recovered from the outside of the residence, which were all of .223 caliber. No rifle was ever recovered, nor were any weapons recovered from Brown's truck. Expert testimony established that the .223 bullets could not have been fired from the 9mm handgun recovered at the scene under Jones's body, but instead could only have been fired from a rifle.

A search of the interior of defendant's house revealed a white rock-like substance later revealed to be cocaine. Though the State could not present any fingerprint evidence linking defendant to the narcotics, defendant admitted in questioning that the deputies had found his stash, but explained he was just a user.

Relative to the felon in possession of a firearm charge, defendant stipulated to a

prior conviction for possession of cocaine. Defendant was not charged by the grand jury with the killing of Jones.

Defendant called two witnesses in his defense. The first was Landry, the gentleman Brown gave a ride home from the repass. Landry saw Brown and defendant "go [in] half" for the liquor that night and witnessed them drink it together at the repass. The two men started arguing after sharing the liquor, but Landry specified it never went beyond heated words. Landry described the argument as being about "some dope or something that got took probably about two or three years ago." As Brown was driving Landry home, Landry explained that Brown told him he wanted to continue the discussion with defendant, and Landry suggested leaving it for another day. Landry testified that Brown wanted to go to defendant's house to clear up a misunderstanding, and Brown at no point expressed any threats toward defendant.

Defendant's second witness was Chelsea Thomas, his girlfriend. She was both at the repass earlier in the day, as well as at the defendant's home when Brown arrived. She testified that before defendant returned home, someone drove under their carport in a black truck, the truck remained there for about five minutes without anyone getting out, and then eventually the truck left. After defendant returned home, she heard arguing outside. Shortly thereafter, she heard several gunshots occurring over a few seconds. She acknowledged that defendant was the person who shot people outside of his home and that defendant necessarily possessed a firearm to do so.

## ASSIGNMENT OF ERROR #1: INSUFFICIENT EVIDENCE

In his first assignment of error, defendant contends that the evidence was insufficient to convict him of attempted manslaughter as he acted in self-defense when he shot Brown. Defendant claims that he reasonably believed he was in mortal danger when Jones arrived unexpectedly at his house in the middle of the night, and he only had moments to decide if Brown was a threat as he walked toward Jones instead of fleeing the premises. In support, defendant points to the fact he only shot Brown in the

5

lower body and explicitly told Brown he would spare his life as proof he only intended to stop Brown rather than kill or maim him. Moreover, defendant argues that because he was justified in shooting Jones and Brown, he had a defense to the charge of felon in possession of a firearm. In turn, the State argues that when viewed in a light most favorable to the prosecution, the evidence was sufficient to prove defendant committed the offenses. The State points to defendant's misleading statements to law enforcement and to the fact that Brown was walking away from defendant when he was repeatedly shot from behind as evidence that discredits defendant's claim of self-defense. Ultimately, the State contends defendant's use of force was neither reasonable nor necessary where there was no evidence that either Brown or Jones pulled a gun on defendant.

A conviction based on insufficient evidence cannot stand, as it violates Due Process. See U.S. Const. amend. XIV; La. Const. art. I, § 2. The standard of review for the sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. **Jackson v. Virginia**, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). The **Jackson** standard of review, incorporated in La. Code Crim. P. art. 821, is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, La. R.S. 15:438 provides that, in order to convict, the fact finder must be satisfied that the overall evidence excludes every reasonable hypothesis of innocence. **State v. Dyson**, 2016-1571 (La. App. 1st Cir. 6/2/17), 222 So.3d 220, 228, writ denied, 2017-1399 (La. 6/15/18), 257 So.3d 685. When direct evidence is viewed in a light most favorable to the prosecution, the facts established by the direct evidence and the facts reasonably inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime.

6

**State v. Brothers.**, 2017-0870 (La. App. 1st Cir. 11/1/17), 233 So.3d 110, 113, writ denied, 2017-2160 (La. 10/8/18), 253 So.3d 803.

An appellate court is constitutionally precluded from acting as a "thirteenth juror" in assessing what weight to give evidence in criminal cases; that determination rests solely on the sound discretion of the trier of fact. **State v. Cockerham**, 2017-0535 (La. App. 1st Cir. 9/21/17), 231 So.3d 698, 705, writ denied, 2017-1802 (La. 6/15/18), 245 So.3d 1035. The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness, including an expert. The fact that the record contains evidence that conflicts with the testimony accepted by the trier of fact does not render the evidence accepted by the trier of fact insufficient. Unless there is internal contradiction or irreconcilable conflict with the physical evidence, the testimony of a single witness, if believed by the fact finder, is sufficient to support a factual conclusion. **State v. Moultrie**, 2014-1535 (La. App. 1st Cir. 12/14/17), 234 So.3d 142, 146, writ denied, 2018-0134 (La. 12/3/18), 257 So.3d 1252. Moreover, when there is conflicting witness testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. **State v. Ruffen**, 2018-1280 (La. App. 1st Cir. 2/28/19), 2019 WL 968412, at *4 (unpublished), writ denied, 2019-00564 (La. 9/6/19), __So.3d__.

**Attempted Manslaughter**

Louisiana Revised Statutes 14:31(A) provides, in pertinent part:

Manslaughter is:

> (1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed;

Additionally, La. R.S. 14:27(A) defines attempt, in pertinent part, as:

7

A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.

In order to obtain a conviction for attempted manslaughter under La. R.S. 14:31(A)(1), the State must prove beyond a reasonable doubt that defendant possessed the specific intent to kill. Specific intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1); **State v. Cousan**, 94-2503 (La. 11/25/96), 684 So.2d 382, 390; **State v. Gregoire**, 2013-0751 (La. App. 1st Cir. 3/21/14), 143 So.3d 503, 506, writ denied, 2014-0686 (La. 10/31/14), 152 So.3d 151. Such state of mind can be formed in an instant. **Cousan**, 684 So.2d at 390 Specific intent need not be proven as a fact, but may be inferred from the circumstances of the transaction and the actions of defendant. **State v. Mickelson**, 2012-2539 (La. 9/3/14), 149 So.3d 178, 182. The existence of specific intent is an ultimate legal conclusion to be resolved by the trier of fact. **State v. Jackson**, 2018-0261 (La. App. 1st Cir. 11/2/18), 265 So.3d 928, 934, writ denied, 2018-1969 (La. 4/22/19), 268 So.3d 304. Deliberately pointing and firing a deadly weapon at close range indicates specific intent to kill. **State v. Broaden**, 99-2124 (La. 2/21/01), 780 So.2d 349, 362, cert. denied, 534 U.S. 884, 122 S.Ct. 192, 151 L.Ed.2d 135 (2001). Specific intent to kill may also be inferred from the extent and severity of the victim's injuries and the defendant's use of a deadly weapon to produce those injuries, which involved serious risk of death. **State v. Alexander**, 51,918 (La. App. 1st Cir. 4/11/18), 247 So.3d 981, 988, writ denied, 2018-0805 (La. 2/11/19), 263 So.3d 436.

Here, there is little doubt defendant intended to kill Brown by aiming an AR-15 at him and firing it several times, striking Brown in the back, hips, legs, and buttocks. Defendant's identical conduct directed toward Jones resulted in Jones's death. That defendant was unsuccessful in killing Brown does not obviate his specific intent to kill,

8

nor is his choice to spare Brown's life exculpatory. See **State v. Frinks**, 2018-899 (La. App. 3d Cir. 6/12/19), 274 So.3d 635, 647 (despite defendant notifying law enforcement of his actions after he severely injured the victim, the court nonetheless found defendant's act of stabbing the victim multiple times sufficient to prove a specific intent to kill in affirmance of defendant's attempted manslaughter conviction); **State v. Tillman**, 47,386 (La. App. 2d Cir. 8/8/12), 104 So.3d 480, 489, writ denied, 2012-2035 (La. 1/25/13), 105 So.3d 714 (court held that the fact the victim "survived the shooting does not negate specific intent to kill"); **State v. Cortez**, 48,319 (La. App. 2d Cir. 8/7/13), 122 So.3d 588, 594 (fact finder appropriately rejected defense claim that State had failed to prove defendant had specific intent to kill intended victim because defendant did not articulate his intentions or actually harm him in any fashion).

Additionally, we find no merit in defendant's claim of self-defense. The use of force or violence upon the person of another is justifiable under La. R.S. 14:19 when committed for the purpose of preventing a forcible offense against the person or a forcible offense or trespass against property in a person's lawful possession, provided that the force or violence must be reasonable and apparently necessary to prevent such offense. The jury was charged with instructions concerning justification and no duty to retreat as it is set forth in La. R.S. 14:19(A)(1)(a) and La. R.S. 14:19(D). Defendant did not object to the form or content of the jury instructions.

Louisiana law is unclear as to who has the burden of proving self-defense or defense of others in a non-homicide case, and what the burden is. See **State v. Barnes**, 590 So.2d 1298, 1300 (La. App. 1st Cir. 1991). In previous cases dealing with this issue, this court has analyzed the evidence under both standards of review, that is whether defendant proved self-defense (or defense of others) by a preponderance of the evidence or whether the State proved beyond a reasonable doubt that defendant did not act in self-defense (or defense of others). In this case, like in **State v. Mollerberg**, 2018-0256 (La. App. 1st Cir. 9/24/18), 260 So.3d 599, 605-06, we need not and do not

9

decide the issue of who has the burden of proving (or disproving) self-defense because under either standard the evidence sufficiently established that the defendant did not act in self-defense.

Defendant did not testify at trial, but through defense counsel's argument, he advanced the theory that he was afraid he was going to be killed because of the argument he and Brown had been having during the course of the day. Jones's unexpected arrival, in defendant's view, reasonably caused him to fear both men were acting in concert to kill him. After defendant shot and killed Jones, Brown started walking toward Jones, and defendant contends he was afraid Brown was going to retrieve Jones's weapon. The jury obviously rejected this hypothesis of innocence as unreasonable.

As an initial matter, Brown testified that he was unaware Jones had a weapon, and there was no testimony or evidence indicating defendant had knowledge Jones was armed. There was no evidence that Brown or Jones made any threats to defendant at any point during the day, notwithstanding Brown and defendant's heated verbal conflict. To the contrary, it was defendant who was heard threatening to "put that chopper" on Brown. Brown testified that defendant had a rifle visibly propped against his house upon Brown's arrival. Defendant concedes that Brown was moving away from him at the time he shot Brown. Further, Brown was repeatedly shot from behind. According to Brown's testimony, he was walking toward Jones before the shooting started. Brown stated that he did not know what caused the defendant to shoot him. He testified that he and the defendant shook hands, and Brown declared the two were "good," right before he turned his back and defendant shot him. Additionally, defendant initially lied to his neighbor, Sgt. Wiggins, and the law enforcement officers who investigated the shooting, stating that someone else had shot Brown and Jones and then ran away. Lying has been recognized as indicative of defendant's awareness of wrongdoing. **Mollerberg**, 260 So.3d at 608.

10

An appellate court errs by substituting its appreciation of the evidence and credibility of witnesses for that of the fact finder and thereby overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected by, the trier of fact. See **State v. Calloway**, 2007-2306 (La. 1/21/09), 1 So.3d 417, 418 (per curiam). Having carefully considered the evidence, we cannot say that the jury's determinations were irrational under the facts and circumstances presented. See **State v. Ordodi**, 2006-0207 (La. 11/29/06), 946 So.2d 654, 662.

## Felon in Possession of a Firearm

Louisiana Revised Statute 14:95.1 makes it unlawful for any person who has been convicted of certain felonies to possess a firearm. To prove a violation of La. R.S. 14:95.1, the State must prove: 1) defendant's status as a convicted felon; and 2) that defendant was in possession of a firearm. **State v. Mose**, 412 So.2d 584, 585 (La. 1982); **State v. Zeno**, 2014-0325 (La. App. 1st Cir. 9/19/14), 155 So.3d 4, 10, writ denied, 2014-2167 (La. 5/22/15), 170 So.3d 983. The State must also prove that ten years have not elapsed since the date of completion of the punishment for the prior felony conviction. See La. R.S. 14:95.1(C).

While La. R.S. 14:95.1 makes it unlawful for certain persons to possess a firearm or to carry a concealed weapon, it does not deny prior felony offenders the specific defense of justification as it is contained in La. R.S. 14:18. See **State v. Blache**, 480 So.2d 304, 308 (La. 1985). When a felon is in imminent peril of great bodily harm, or reasonably believes himself or others to be in such danger, he may take possession of a weapon for a period no longer than is necessary or apparently necessary to use it in self-defense, or in defense of others. **Id.**

Defendant concedes he is the one who fired at Brown with an AR-15. However, as noted above, the jury rationally found that defendant did not have a valid claim of self-defense for the attempted manslaughter of Brown. Consequently, he similarly

does not have a self-defense claim regarding his possession of the firearm used to commit that attempted manslaughter. This claim is also without merit.

## ASSIGNMENT OF ERROR # 2: RIGHT TO PRESENT DEFENSE

In his second assignment of error, defendant asserts the trial court erred when it denied him the right to present evidence relative to his claim of self-defense. Specifically, defendant alleges that in 2010 he was shot in his yard, and that this event contributed to his attempted use of deadly force against Brown. Defendant argues that the danger he perceived at Jones's arrival with a weapon was due in part to his previous experience. The State responds that defendant is not entitled to present irrelevant or non-probative evidence.

The day before trial commenced, the State filed a motion in limine to exclude any evidence of prior threats against defendant by anyone, including the victim. The trial court considered the motion prior to voir dire. The State indicated that it filed the motion in limine because of defendant's statement to law enforcement regarding an alleged 2010 shooting incident. When the trial court asked the defense if it planned to bring up the statement, counsel's response was "I don't know, Judge." The trial court permitted references to events occurring earlier that night, but ruled evidence regarding the 2010 incident irrelevant and inadmissible. There was no proffer of the specific evidence defendant may have attempted to introduce.

The Sixth and Fourteenth Amendments to the United States Constitution and Article I, § 16 of the Louisiana Constitution guarantee the criminally accused a meaningful opportunity to present a complete defense. **State v. Dressner**, 2008-1366 (La. 7/6/10), 45 So.3d 127, 137, cert. denied, 562 U.S. 1271, 131 S.Ct. 1605, 179 L.Ed.2d 500 (2011). Fundamental to due process of law is the right to present a defense, and to have it fairly considered by the jury. **State v. Wilson**, 2017-0908 (La. 12/5/18), ___ So.3d ___, ___, 2018 WL 6382169, at *3 (citing **Chambers v. Mississippi**, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973) and **Washington v.**

12

**Texas**, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967)). A defendant has the right to present any and all relevant evidence bearing on his innocence, unless prohibited by our federal and state constitutions, by law or by jurisprudence. **State v. Ludwig**, 423 So.2d 1073, 1077 (La. 1982); **State v. Magee**, 2017-1217 (La. App. 1st Cir. 2/27/18), 243 So.3d 151, 163, writ denied, 2018-0509 (La. 2/11/19), 263 So.3d 434. It is well settled that evidentiary rules may not supersede the fundamental right to present a defense. **State v. Nagi**, 2017-1257 (La. App. 1st Cir. 4/9/18), 2018 WL 1704253 at *15 (unpublished), writ denied, 2018-0739 (La. 3/25/19), 267 So.3d 602 (citing **State v. Van Winkle**, 94-0947 (La. 6/30/95), 658 So.2d 198, 202).

However, the right to present a defense does not require the trial court to admit irrelevant evidence or evidence with such little probative value that it is substantially outweighed by other legitimate considerations. **State v. Nixon**, 2017-1582 (La. App. 1st Cir. 4/13/18), 250 So.3d 273, 280, writ denied, 2018-0770 (La. 11/14/18), 256 So.3d 290 (citing **State v. Coleman**, 2014-0402 (La. 2/26/16), 188 So.3d 174, 197, cert. denied, —— U.S. ——, 137 S.Ct. 153, 196 L.Ed.2d 116 (2016)). The trial court is vested with broad discretion in determining whether evidence is relevant or, even if relevant, has such little probative value that it is substantially outweighed by other considerations. See La. Code Evid. art. 403. A trial court's determinations regarding relevancy and admissibility should not be overturned absent a clear abuse of discretion. See **State v. Mosby**, 595 So.2d 1135, 1139 (La. 1992); **State v. Martin**, 2017-1100 (La. App. 1st Cir. 2/27/18), 243 So.3d 56, 64, writ denied, 2018-0568 (La. 3/6/19), 266 So.3d 901.

Based on our careful review of the entire record, we find no reason to disturb the trial court's ruling on the State's motion in limine. The trial court did not deny defendant due process of law by prohibiting the defense from introducing evidence of an incident that allegedly occurred in 2010. Louisiana Code of Evidence article 404(B)(2) provides, in pertinent part, that "[i]n the absence of evidence of a hostile

13

demonstration or an overt act on the part of the victim at the time of the offense charged, evidence of ... the accused's state of mind as to the victim's dangerous character is not admissible[.]" An overt act is any act which manifests to the mind of a reasonable person a present intention to kill or inflict great bodily harm. **State v. Sartain**, 2008-0266 (La. App. 4th Cir. 12/30/08), 2 So.3d 1132, 1145, writ denied, 2009-0167 (La. 10/30/09), 21 So.3d 274. There was no allegation that Brown or Jones were involved in the alleged incident that occurred in 2010 nor was there any evidence offered at trial of an overt act committed by Brown at the time of the shooting. Hence, the evidence generally described by counsel would not have been relevant to the determination of whether the force defendant used was both objectively and subjectively reasonable in regard to Brown, the specific victim in this case. See **State v. Ford**, 2016-869 (La. App. 3d Cir. 4/19/17), 217 So.3d 634, 640, writ denied, 2017-0936 (La. 4/6/18), 239 So.3d 829 (holding that the trial court did not abuse its discretion in finding evidence of an unrelated incident that did not happen near in time to the offense at issue to be irrelevant). Moreover, even if somehow relevant to defendant's subjective belief that the use of force was necessary, it does nothing to alter the fact there was no objective justification shown to shoot Brown in the back as he attempted to walk away. This claim is without merit.

## ASSIGNMENT OF ERROR #3: NON-UNANIMOUS JURY VERDICTS

In the third assignment of error, defendant contends that the non-unanimous jury verdict required to convict him under La. Code Crim. P. art. 782(A) was unconstitutional. Defendant concedes that the matter has heretofore been controlled by the Louisiana Supreme Court's ruling in **State v. Bertrand**, 2008-2215 (La. 3/17/09), 6 So.3d 738, but argues that the United States Supreme Court is poised to overturn that line of reasoning. The State contends La. Code Crim. P. art. 782(A), as it existed on the date of offense, is controlling and that **Bertrand** is still the controlling precedent in Louisiana.

14

In the trial court, at the conclusion of the State's case, defendant objected to being subject to a non-unanimous jury verdict, but did not do so with any specificity or alleging any specific constitutional ground. It is well-settled that a constitutional challenge may not be considered by an appellate court unless it was properly pleaded and raised in the trial court below. In order to do so, a party must raise the issue of unconstitutionality in the trial court, the alleged unconstitutionality must be specially pleaded, and the grounds outlining the basis of unconstitutionality must be particularized. See **State v. Hatton**, 2007-2377 (La. 7/1/08), 985 So.2d 709, 718-19. The claim has arguably been waived here due to the manner in which it was raised at trial.

In any event, in actions properly challenging the constitutionality of a statute, but not resulting in a declaratory judgment, the Louisiana Supreme Court has held that the Attorney General <u>should</u> be served a copy of the pleadings. **Vallo v. Gayle Oil Co.**, 94-1238 (La. 11/30/94), 646 So.2d 859, 864. Additionally, La. R.S. 13:4448 <u>requires</u> the courts of appeal and the Louisiana Supreme Court to notify the Attorney General and afford him an opportunity to be heard prior to adjudicating the constitutionality of a state statute. **State v. V.L.G.**, 2011-0634 (La. App. 3d Cir. 12/7/11), 2011 WL 6077831, at *16 (unpublished). Following that service, the Attorney General then has the discretion to represent the State's interests at any subsequent proceedings. See **State v. Rogers**, 2014-1435 (La. App. 1st Cir. 6/5/15), 2015 WL 3547116, at n.3 *3 (unpublished) (Attorney General should have been served notice of constitutional challenge below and, at discretion, been allowed to be heard and represent or supervise the State's representation); <u>see also</u> **State v. Broussard,** 2018-0616 (La. App. 1st Cir. 12/21/18), 268 So.3d 307, 310.

Here, even assuming defendant properly raised the issue at trial, there is nothing in the record indicating that the Attorney General was given any notice of defendant's constitutional challenge. On May 24, 2019, this court notified the Attorney General of

15

the pending constitutional claim in accordance with La. R.S. 13:4448. On August 15, 2019, the Attorney General submitted a brief, making four main arguments in resolving defendant's claims: 1) defendant did not properly preserve the issue on appeal when he failed to raise it in the trial court;[4] 2) constitutional challenges to the non-unanimous jury verdict paradigm have been foreclosed by the jurisprudence of this and the other circuit courts; 3) defendant's claim that **Apocada**[5] was decided in error is without merit where there has been historically no constitutional right to a unanimous jury verdict under the Sixth and Fourteenth Amendments to the United States Constitution; and 4) due process does not require jury unanimity. In the alternative, the Attorney General argues this court should stay the proceedings until **Ramos**, infra, is decided by the United States Supreme Court.

Defendant concedes that this and other courts have rejected the arguments regarding non-unanimous jury verdicts. Our supreme court in **Bertrand**, 6 So.3d at 742-43, found that a non-unanimous twelve-person jury verdict is constitutional and that La. Code Crim. P. art. 782 does not violate the Fifth, Sixth, and Fourteenth Amendments.

In any event, the United States Supreme Court on March 18, 2019, granted certiorari in **State v. Ramos**, 2016-1199 (La. App. 4th Cir. 11/2/17), 231 So.3d 44, writ denied, 2017-2133 (La. 6/15/18), 257 So.3d 679, and writ denied sub nom., **State ex rel. Evangelisto Ramos v. State**, 2017-1177 (La. 10/15/18), 253 So.3d 1300, and cert. granted, ___ U.S. ___, 139 S.Ct. 1318, 203 L.Ed.2d 563 (2019), to address the question of whether the unanimous jury verdict requirement of the Sixth Amendment to the United States Constitution applies to the states through application of the Fourteenth Amendment. Depending on the Court's ultimate holding in **Ramos**, defendant may

---

[4] See **State v. Talley**, 2018-1300 (La. App. 1st Cir. 5/9/19), 277 So.3d 397, 408 (citing **Hatton**, 985 So.2d at 718-19.)

[5] **Apodaca v. Oregon**, 406 U.S. 404, 412-13, 92 S.Ct. 1628, 1634, 32 L.Ed.2d 184 (1972).

have grounds to raise this issue again in a future proceeding. At this time, this claim is without merit.

## ASSIGNMENT OF ERROR #4:  DEFECTIVE JURY VENIRE

In his final assignment of error, defendant argues that the trial court erred when it denied his motion for new trial on the ground that the racial makeup of the jury venire was not representative of the parish population. Specifically, counsel noted that the venire members primarily from Pierre Part and Bayou L'Ourse were served with jury duty summons, communities defendant contends are mostly white. Defendant cites the roll of prospective jurors, noting that only 56 of 275 proposed panel members were served with jury duty summons and were present. Defendant posits that communities with a larger African-American population were systematically not served with jury summons, notwithstanding the fact there were residents of those communities on the list. Defendant seeks a hearing to determine if the jury duty summons service process resulted in the under-representation of African-Americans on the venire. The State responds that defendant failed to provide evidence that African-American jurors were intentionally and systematically excluded from the jury venire. In the State's view, defendant failed to allege any fact upon which the venire could be set aside.

Before the trial court's final ruling on his motion for new trial, defendant proffered the list of venire members dated September 26, 2018, which contained the names and addresses of the petit jury venire. Defendant also proffered a list of Assumption Parish polling places and the number of registered voters by party and race. (Ex. "Assumption Parish Poll Place Name and Location & Registered Voters by Party and Place"). The trial court denied the motion on the basis that it "does not show the defendant will call witnesses or submit evidence and/or new evidence not presented at trial," citing **State v. Kitts**, 2017-0777 (La. App. 1st Cir. 5/10/18), 250 So.3d 939, 960. As defendant notes, this was likely for the purpose of highlighting the legal

17

proposition that defendant bears the burden of proving the grounds for setting aside the venire. **Kitts**, 250 So.3d at 960.

In **State v. Smith**, 2017-1333 (La. App. 1st Cir. 2/21/18), 2018 WL 1007350, at *4 (unpublished), writ denied, 2018-0405 (La. 2/18/19), 265 So.3d 771, this court noted:

> The proper procedural vehicle for alleging that the general or petit jury venire was improperly drawn, selected, or constituted is a motion to quash. La. C.Cr.P. art. 532(9). A motion to quash based on the ground that the petit jury venire was unconstitutionally drawn should be filed in writing prior to the beginning of the jury selection. See La. C.Cr.P. arts. 521, 532(9), and 535(C); see also **State v. Pooler**, 96-1794 (La. App. 1st Cir. 5/9/97), 696 So.2d 22, 39, writ denied, 97-1470 (La. 11/14/97), 703 So.2d 1288. Herein, the record shows that the defendant did not move to quash the petit jury venire by oral or written motion. Thus, the defendant did not properly raise his challenge to the jury venire's composition. Any grounds for that potential motion were waived. See La. C.Cr.P. art. 535(D).

Here, defendant did not file such a pretrial motion to quash and did not raise the issue before voir dire began. Consequently, this claim is not properly before the court and is denied as waived.

## PATENT ERROR

Pursuant to La. Code Crim. P. art. 920, this court routinely conducts a review for error discoverable by mere inspection of the pleadings and proceedings and without inspection of the evidence. After a careful review of the record, we have found two patent errors.

First, at the time defendant committed this offense in January 2017, La. R.S. 14:95.1(B) provided for a sentencing range of imprisonment, at hard labor, of not less than ten nor more than twenty years (without benefits and a mandatory fine). Under 2017 La. Acts, No. 281, § 1, which became effective on August 1, 2017, La. R.S. 14:95.1(B) was amended to provide for a sentencing range of imprisonment at hard labor for not less than five nor more than twenty years (without benefits and a mandatory fine). Defendant was sentenced on November 28, 2018, i.e., after the effective date of 2017 La. Acts, No. 281, § 1.

18

This court recently held that, subsequent to its 2017 amendment, the specific language of La. R.S. 14:95.1(B) overcomes the general rule that the statute in effect at the time of the offense governs the applicable punishment for the crime and, therefore, demonstrates a legislative intent for its retroactive application. See **State v. Harrison**, 2017-1566 (La. App. 1st Cir. 5/1/18), 2018 WL 2041414, at *4 (unpublished), writ denied, 2018-1110 (La. 3/6/19), 266 So.3d 896; see also **State v. Miller**, 2018-0767 (La. App. 1st Cir. 4/12/19), 276 So.3d 175, 178. At the sentencing hearing, the trial court recited the sentencing range of imprisonment for the crime of convicted felon in possession of a firearm as being at hard labor for not less than ten years, nor more than twenty years without benefits. Because the record establishes that the trial court was unaware that the amendment to La. R.S. 14:95.1(B) applied to defendant and did not apply the actual sentencing range to which defendant was subject, we vacate defendant's sentence for felon in possession of a firearm and remand for the trial court to impose a sentence consistent with the sentencing range set forth in La. R.S. 14:95.1(B), following amendment by 2017 La. Acts No. 281, § 1.

Second, defendant filed a motion for new trial, and the trial court denied it on the day of sentencing, just prior to the imposition of sentence. Louisiana Code of Criminal Procedure article 873 mandates, in pertinent part, that "[i]f a motion for a new trial, or in arrest of judgment, is filed, sentence shall not be imposed until at least twenty-four hours after the motion is overruled" unless the defendant expressly waives the delay. There is no indication in the record defendant waived the twenty-four hour delay for sentencing. Herein, the trial court erred by sentencing defendant immediately after ruling on the motion for new trial. While defense counsel did not contest moving on to sentencing immediately following the denials of his motion for new trial, in **State v. Kisack**, 2016-0797 (La. 10/18/17), 236 So.3d 1201, 1205 (per curiam), cert. denied, ___ U.S. ___, 138 S.Ct. 1175, 200 L.Ed.2d 322 (2018), the supreme court found the defense counsel's participation in the sentencing hearing was insufficient to constitute

19

a waiver of the delay required by La. Code Crim. P. art. 873. As observed by the court, "[a]n implicit waiver . . . runs afoul of the plain language of [La. Code Crim. P. art.] 873 that requires that the waiver be expressly made."

Nevertheless, in **State v. Augustine**, 555 So.2d 1331, 1333-34 (La. 1990), the Louisiana Supreme Court indicated that a failure to observe the twenty-four hour delay provided in La. Code Crim. P. art. 873 will be considered harmless error where defendant cannot show that he suffered prejudice from the violation, and sentencing is not challenged on appeal. See **State v. White**, 404 So.2d 1202, 1204-05 (La. 1981); see also **State v. Carter**, 2014-0742 (La. App. 1st Cir. 3/25/15), 167 So.3d 970, 979 (observing that "[a]s a general rule, when a defendant challenges a non-mandatory sentence, and the delay is not waived, the defendant's sentence must be vacated and the matter remanded for resentencing"). Defendant has raised no challenge to the sentences imposed on appeal. Moreover, as the case requires remand for resentencing on the felon in possession of a firearm conviction, any error caused by the trial court's failure to wait the mandated twenty-four hours between the denial of defendant's motion for new trial and sentencing is rendered moot.

**CONVICTIONS AFFIRMED; SENTENCE FOR FELON IN POSSESSION OF A FIREARM VACATED AND REMANDED FOR RESENTENCING.**

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NUMBER 2019 KA 0409

STATE OF LOUISIANA

VERSUS

KIRBY THOMAS

 **PENZATO, J., concurring, in part.**

While I agree with the reasons of the majority opinion as to those portions of

the judgment affirming the defendant's convictions, vacating the sentence for felon

in possession of a firearm, and remanding for resentencing, I concur and write

separately regarding the assignment of error as to the defective jury venire. I agree

with the majority that *State v. Smith*, 2017-1333 (La. App. 1 Cir. 2/21/18), 2018

WL 1007350, *writ denied*, 2018-0405 (La. 2/18/19), 265 So. 3d 771, is controlling

in that the defendant waived his right to challenge the jury venire by failing to

move to quash the venire prior to the time that voir dire began. Further, the record

reflects that the jurors were qualified pursuant to La. C.Cr.P. art. 401 in open court

allowing the defendant to observe the racial composition of the entire pool and that

the list of jurors reflecting addresses and service information was filed into the

record on September 26, 2018.

For these reasons, I respectfully concur, in part.

STATE OF LOUISIANA 2019 KA 0409

VERSUS COURT OF APPEAL

KIRBY THOMAS FIRST CIRCUIT

STATE OF LOUISIANA

BEFORE: HIGGINBOTHAM, PENZATO AND LANIER, JJ.

LANIER, J., dissenting in part.

I agree with the majority that defendant's convictions should stand on the merits, and that defendant's sentence on the charge of felon in possession of a firearm should be remanded for resentencing; however, I believe that before reaching the convictions and sentences, this matter should be remanded for a pretrial evidentiary hearing on whether African Americans were systematically excluded from the jury venire, as the clerk of court's records indicate that a very large number of residents of the Napoleonville area, which has a significant African American population, were not served.

The majority is correct that one of the permissive grounds for a motion to quash given in La. C.Cr.P. art. 532 is that the jury venire was improperly drawn, selected, or constituted. The majority relies on *State v. Smith* for the assertion that the defendant waived his right to argue the issue of the racial composition of the jury venire by failing to file a motion to quash. *Smith* indicates that the motion to quash is the "proper" means by which to attack the composition of the jury venire; however, *Smith* does not state the motion to quash is the exclusive means.

Here, defendant did not file such a pretrial motion to quash and did not raise the issue before voir dire began. Defendant did raise the issue and objected before trial commenced at the conclusion of voir dire. The trial court noted defendant's objection. In order to preserve the right to appeal this issue, defendant had to make a timely objection and state the grounds of his objection. See *Martin v. Francis*, 600

1

So.2d 1382, 1387 (La. App. 1 Cir. 1992), <u>writ denied</u>, 606 So.2d 541 (La. 1992). Defendant did just that, but the trial court did not have a hearing on the issue before the jury was sworn and the trial commenced.

Defendant again raised the issue of the venire composition in his motion for new trial. Prior to defendant's sentencing, the trial court summarily denied the motion without a hearing on the basis that it "does not show the defendant will call witnesses or submit evidence and/or new evidence not presented at trial." However, defendant had never claimed that new or material evidence was discovered after the trial.

Louisiana Code of Criminal Procedure art. 851 states that the motion for a new trial is "based on the supposition that injustice has been done the defendant." In this case, defendant notes that of the 56 venire members summoned to appear and were present, 33 were from Pierre Part, a town defendant alleges is "well known to lack black residents[,]" and that only three panel members overall were African-American. Defendant contends the list of registered voters indicates Assumption Parish is 31% African-American, whereas only 5.3% made it to the jury panel. Defendant determined the addresses of those 56 panel members from a list provided to the attorneys by the clerk of court. Defendant further calculated that 76% of the entire venire came from either Pierre Part or Bayou L'Ourse[1], both of which are predominantly populated by Caucasians.

A general jury venire "shall not be set aside for any reason unless fraud has been practiced, some great wrong committed that would work irreparable injury to the defendant, or unless persons were systematically excluded from the venires solely upon the basis of race." *State v. Lee*, 559 So.2d 1310, 1313-14 (La. 1990), <u>cert. denied</u>, 499 U.S. 954, 111 S.Ct. 1431, 113 L.Ed.2d 482 (1991). Defendant's

---

[1] Bayou L'Ourse is incorrectly spelled as "Bayou Louis" in the trial transcript.

2

argument, at the very least, suggests that African Americans were systematically excluded from the jury selection process.

Systematic exclusion of a specific class in the source or sources from which the jury venires are chosen is precluded by law and, along with being denied a hearing on the matter despite raising a timely objection, would be an injustice upon defendant. Out of an abundance of caution, I would remand this matter to the trial court for a pre-trial evidentiary hearing solely on the issue of whether African Americans were systematically excluded from the jury venire by lack of service.

For the above reasons, I respectfully dissent.