NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

22-326

STATE OF LOUISIANA

VERSUS

MARLIN DEVARY DEMOUCHET

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 11581-20
HONORABLE ROBERT LANE WYATT, DISTRICT JUDGE

**********

D. KENT SAVOIE
JUDGE

**********

Court composed of Elizabeth A. Pickett, Billy Howard Ezell, and D. Kent Savoie, Judges.

VACATED IN PART,
AFFIRMED IN PART, AND
REMANDED WITH INSTRUCTIONS.

**Stephen C. Dwight**
**14th JDC District Attorney**
**P. O. Box 3206**
**Lake Charles, LA 70601**
**(337) 437-3400**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
**State of Louisiana**

**John E. Turner**
**Dale R. Lee**
**Assistant District Attorney 14 JDC**
**901 Lakeshore Drive, Suite #800**
**Lake Charles, LA 70601**
**(337) 437-3400**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
**State of Louisiana**

**Andrew R. Hairston**
**Attorney at Law**
**1135 Leona St., #3**
**Austin, Tx 78702**
**(614) 975-7187**
**COUNSEL FOR DEFENDANT/APPELLANT:**
**Marlin Devary Demouchet**

**SAVOIE, Judge.**

On August 20, 2020, the Defendant, Marlin Devary Demouchet, was charged by grand jury indictment with one count of aggravated rape,[1] a violation of La.R.S. 14:42(A)(4); three counts of sexual battery against three different victims, violations of La.R.S. 14:43.1; and one count of simple escape, a violation of La.R.S. 14:110. These offenses had previously been charged in separate docket numbers and were consolidated into one docket number by the August 20, 2020 indictment.

On May 20, 2021, a unanimous jury found Defendant guilty of the responsive verdict of sexual battery for count one; guilty as charged of sexual battery for counts two and four; guilty of the responsive verdict of attempted sexual battery for count three; and guilty as charged of simple escape for count five. On July 7, 2021, Defendant filed a Motion for New Trial, which was denied by the trial court at the sentencing hearing that same date. After waiving the La.Code Crim.P. art. 873 delay for sentencing, Defendant was sentenced on July 7, 2021, as follows:

- Count one – sexual battery (victim under 13) – 30 years DOC, without benefit of probation, parole, or suspension of sentence.

- Count two – sexual battery (victim under 13) – 30 years DOC, without benefit of probation, parole, or suspension of sentence.

- Count three – attempted sexual battery (victim under 13) – 15 years DOC, without benefit of probation, parole, or suspension of sentence.

- Count four – sexual battery – ten years DOC, without benefit of probation, parole, or suspension of sentence.

- Count five – simple escape – three years DOC.

---

[1]At the time the offense was committed (August 1, 2010 through January 31, 2011), a violation of La.R.S. 14:42 was referred to as aggravated rape. In 2015, the offense was renamed "first degree rape."

The trial court ordered counts one through four to run concurrently and count five to run consecutively.

Pursuant to a habitual offender bill filed by the State, on August 18, 2021, the trial court found Defendant to be a second habitual offender. On that same date, the trial court stated that it was going to vary from the mandatory minimum sentences, and it imposed the following sentences:

- Count one (sexual battery) – sentence amended from 30 to 45 years.

- Count two (sexual battery) – sentence amended from 30 to 45 years.

- Count three (attempted sexual battery) – sentence amended from 15 to 20 years.

- Count four (sexual battery) – sentence amended from 10 to 15 years.

- Count five (simple escape) – remained the same.

The trial court also said "all of those without benefit of probation, parole, or suspension of sentence.

On September 17, 2001, Defendant fax-filed a Motion to Reconsider Sentence, which was denied by the trial court by a written order filed October 15, 2021.

Defendant appeals and alleges four assignments of error. He argues that the trial court (1) "erred in establishing habitualization by considering an unrelated conviction from 2001[;]" (2) "erred in its speedy trial computation, in violation of the Sixth Amendment to the U.S. Constitution[;]" (3) "erred in denying the motion for a new trial, in violation of the Sixth Amendment to the U.S. Constitution[;]" and (4) "erred in adopting an excessively long sentence[.]"

For the following reasons, we conclude that the first three assigned errors have no merit, and the fourth assignment of error is pretermitted by our decision to vacate the sentences imposed due to errors patent.

## FACTS

Defendant was convicted of sexual offenses involving three different victims. Three of the offenses are alleged to have occurred between August 1, 2010, and January 31, 2011, at which time one of the victims was between the ages of nine and ten and the other victim was age eight. The fourth sexual offense is alleged to have occurred on or about December 29, 2014, at which time the victim was age thirteen. According to the parties' briefs, the victims were children of women Defendant dated. Defendant was also convicted of escaping from the Calcasieu Parish Sheriff's Office on February 13, 2015.

## ERRORS PATENT:

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. We find there are several errors involving the sentences imposed.

First, we find that the sentences imposed at the habitual offender hearing are indeterminate. The trial court did not vacate the original sentences and impose new habitual offender sentences; rather, it simply amended the original sentences.

The habitual offender statute states the following, in pertinent part:

> (3) When the judge finds that he has been convicted of a prior felony or felonies, or if he acknowledges or confesses in open court, after being duly cautioned as to his rights, that he has been so convicted, the court shall sentence him to the punishment prescribed in this Section, and shall **vacate the previous sentence if already imposed**, deducting from the new sentence the time actually served under the sentence so vacated. The court shall provide written reasons for its determination. Either party may seek review of an adverse ruling.

La.R.S. 15:529.1(D)(3) (emphasis added). Thus, vacation of the original sentence is required prior to the imposition of the habitual offender sentence.

The significance of failing to vacate an original sentence before imposing a habitual offender sentence was recently discussed by this court in *State v. Cooley*, 21-25, 21-26, pp. 17-21 (La.App. 3 Cir. 10/6/21), 329 So.3d 870, 880-81.

> The jurisprudence has dealt with the failure to vacate in various ways. In *State v. Jackson*, 00-717 (La. App. 1 Cir. 2/16/01), 814 So.2d 6, *writ denied*, 01-673 (La. 3/15/02), 811 So.2d 895, the first circuit discussed how the different circuits had analyzed the issue up until that time (2001). The court noted that both its circuit and the second circuit had found error when the trial court failed to vacate the original sentence but corrected the error on their own without the need for a remand. *Id*. at 9 (citing *State v. Smith*, 00-423 (La.App. 1 Cir. 11/3/00), 769 So.2d 1280, *writ denied*, 01-993 (La. 12/14/01), 804 So.2d 630; *State v. Hayes*, 97-1526 (La.App. 1 Cir. 5/15/98), 712 So.2d 1019, *writ granted on other grounds*, 98-1603 (La. 12/11/98), 729 So.2d 584; and *State v. Hunt*, 573 So.2d 585 (La.App. 2 Cir. 1991).
>
> The third, fourth, and fifth circuits, however, had taken the approach of declaring the second sentence as "null and void" when the trial court failed to vacate the original sentence. *Jackson*, 814 So.2d at 9-10 (citing *State v. Dearmas*, 606 So.2d 567 (La.App. 5 Cir. 1992); *State v. Melbert*, 00-527 (La.App. 3 Cir. 11/2/00), 776 So.2d 499; and *State v. London*, 98-65 (La.App. 5 Cir. 5/27/98), 712 So.2d 287, *writ denied*, 98-1903 (La. 11/13/98), 730 So.2d 933. These courts reasoned that the original sentence was still in effect, necessitating the case be remanded for resentencing on the habitual offender adjudication. *Id*.
>
> The court in *Jackson* stated, however, that the continuing validity of the "null and void" approach was called into question by the supreme court in *State v. Mayer*, 99-3124 (La. 3/31/00), 760 So.2d 309 (per curiam). *Jackson*, 814 So.2d at 10-11. In *Mayer* the supreme court appeared to depart from the idea that a second sentence was "null and void" if the trial court failed to vacate the original sentence. The supreme court stated the following:
>
> > Granted in part; denied in part. The order of the court of appeal vacating the defendant's multiple offender sentence and remanding for resentencing is vacated, and the defendant's multiple offender sentence as imposed by the trial court is reinstated. To the extent that the October 30, 1998 commitment/minute entry reflects that the trial judge vacated the defendant's original sentence and thereby eliminated any possible confusion as to the terms

4

of the defendant's confinement, the failure of the transcript of the multiple offender hearing to show that the court did so before sentencing the defendant as a multiple offender did not affect the substantial rights of the defendant. La.C.Cr.P. art. 921; *see State ex rel. Haisch v. State*, 575 So.2d 816 (La.1991) ("The trial court is ordered to vacate the twenty-one year sentence it first imposed coincidentally with its imposition of the enhanced sentence. See La.R.S. 15:529.1(D)."). In all other respects the application is denied.

*Mayer*, 760 So.2d at 310.

In light of *Mayer*, the first circuit found there was no need to depart from its procedure of correcting the trial court's failure to vacate on its own, without remanding the case for resentencing:

In the instant case, the same judge pronounced both the original sentence on the armed robbery conviction as well as the new sentence under the habitual offender statute. Before the court sentenced defendant as a habitual offender, the prosecutor called the court's attention to the earlier sentencing. The proceedings give no indication the court intended to impose the habitual offender sentence as an additional penalty. Thus, the court obviously intended for the life imprisonment imposed after the habitual offender adjudication to be the sentence in this case. The court simply overlooked its duty to vacate the original sentence. Correction of the trial court's failure to vacate the original sentence does not involve the exercise of sentencing discretion and will eliminate any possibility of confusion as to the terms of the confinement. Thus, we vacate the original forty-year sentence imposed on February 20, 1997, to conform to the requirements of La. R.S. 15:529.1. It is not necessary to vacate the habitual offender sentence imposed on September 11, 1997, or to remand for resentencing. *See* La.Code Crim. P. art. 882; *State v. Hunt*, 573 So.2d at 587. However, the case is remanded for the district court to amend the minute entry and commitment to reflect that the original sentence has been vacated.

*Jackson*, 814 So.2d at 11.

We agree with the first circuit. It is clear from the per curiam in *Mayer* that the supreme court was concerned with ensuring the clarity of the sentence in order to protect Mayer and was not in favor of labeling the habitual offender sentence as "null and void" simply because the trial court neglected to vacate the original sentence. The

jurisprudence has consistently followed *Mayer* when the commitment/minute entry reflects that the trial court vacated the original sentence even though the transcript does not. *State v. Cummings*, 10-891 (La.App. 5 Cir. 10/25/11), 79 So.3d 386, *writ denied*, 11-2607 (La. 4/9/12), 85 So.3d 693*; State v. Clements*, 12-1132 (La.App. 4 Cir. 3/13/13), 112 So.3d 306.

In the present case, neither the transcript, minute entry, nor commitment order state that the trial court vacated the original sentences. Thus, this case is distinguishable from *Mayer*. However, the trial court in the present case made clear during the sentencing hearing that it was resentencing the defendant. The trial court also signed an order stating that it was going to re-sentence the defendant, and the commitment order states the trial court re-sentenced the defendant. Furthermore, the trial court sentenced the defendant to the same sentence that it originally imposed – a mandatory life sentence. Considering these factors, this court considers the sentences imposed at the resentencing hearing to be the sentences in effect, not the sentences imposed at the original sentencing hearing. To make sure the record is clear, the trial court is instructed to vacate the original sentences on all the counts, including counts three and four.

The present case is distinguishable from *Cooley* and *Mayer* since the trial court simply amended the original sentences instead of imposing new habitual offender sentences. Additionally, unlike the minutes in *Mayer*, the minutes in the present case do not indicate that the trial court vacated the original sentences. The minutes in the present case state that the trial court *resentenced* Defendant as a habitual offender, and therefore, the trial court's actions at the habitual offender sentencing were akin to an amendment rather than a resentencing. Accordingly, the minutes in the present case add to the confusion rather than eliminate any possibility of confusion as to the sentences imposed. Furthermore, at the original sentencing, the trial court ordered counts one through four to run concurrently and count five to run consecutively. The trial court stated nothing about the sentences running concurrently and/or consecutively at the habitual offender sentencing. Because the trial court simply amended the sentences at the habitual offender proceeding, it is possible it intended to impose the same instructions regarding the sentences being

6

served concurrently and consecutively. Without the trial court specifically stating such, however, the trial court's intention is not clear.

Additionally, it is unclear as to whether the trial court found Defendant was a second habitual offender as to count five, simple escape. The State charged Defendant as a second habitual offender on all five counts. At the habitual offender proceeding, the trial court found Defendant to be a second habitual offender without specifying on what count or counts. When imposing the habitual offender sentences, the trial court amended the original sentences imposed on counts one through four but stated that the simple escape sentence remained the same. Therefore, it is not clear whether the trial court declined to adjudicate Defendant as a second habitual offender on count five, or whether the trial court simply decided to leave the sentence the same. The original three-year sentence imposed for simple escape was within the range for a second habitual offender.

An additional point of uncertainty involves the trial court's statement at the habitual offender sentencing that "all of those [are] without benefit of probation, parole, or suspension of sentence." The trial court made this statement after it had amended all of the habitual offender sentences and after it had stated that the simple escape sentence remained the same. Section G of La.R.S. 15:529.1 states that any habitual offender sentence must be served at hard labor without benefit of probation or suspension. The restriction of parole eligibility, however, is that which is provided for in the reference statute. *State v. Ford*, 16-869, (La.App. 3 Cir. 4/19/17), 217 So.3d 634, *writ denied*, 17-936 (La. 4/6/18), 239 So.3d 829.

Although the applicable statutes for counts one through four allow for the denial of parole eligibility, the applicable statute for simple escape does not. La.R.S. 14:43.1(C)(1) and (2) and La.R.S. 14:110(B)(4). Thus, if the trial court intended the

7

simple escape sentence to also be served without benefit of parole, the simple escape sentence would be illegal and would require correction.

Finally, although the trial court specified at the original sentencing that each sentence was to be served in the Department of Corrections (hard labor), the trial court did not specify such at the habitual offender sentencing. It appears the trial court did not feel it needed to repeat that the habitual offender sentences were to be served at hard labor since it simply amended the sentences imposed at the original sentencing and since it said the sentence for simple escape remained the same. Although the failure to state that a sentence is to be served at hard labor does not normally require correction when the sentence is necessarily at hard labor, we find that the failure to do so in the present case further exacerbates the indeterminate nature of the sentences imposed for counts one through four.

Considering the above, the sentences imposed at the habitual offender hearing are vacated. Even though the trial court said the simple escape sentence remained the same, other aspects of the habitual offender sentencing impact the sentence for simple escape, *i.e.,* the failure to specify whether it found Defendant was a second habitual offender as to simple escape, and the failure to specify whether the sentence for simple escape was to run consecutively to the other sentences as it had previously done at the original sentencing. Therefore, the sentence imposed for simple escape is vacated as well.

This case is hereby remanded for resentencing, and the trial court is instructed to specify on which count or counts Defendant is adjudicated a second habitual offender, to vacate the original sentence(s) on those count(s), and to impose a new sentence(s) pursuant to La.R.S. 15:529.1, if appropriate.

8

We further note that there is an error in the original sentencing minutes. According to the transcript of the original sentencing, the trial court imposed a sentence of three years for simple escape; however, the minutes indicate that a sentence of five years for simple escape was imposed. It is well-settled that the transcript prevails when it conflicts with the minutes. *State v. Wommack*, 00-137 (La.App. 3 Cir. 6/7/00), 770 So.2d 365, *writ denied*, 00-2051 (La. 9/21/01), 797 So.2d 62. Accordingly, the trial court is instructed to amend the original sentencing minutes to correctly reflect that the trial court's original sentence for simple escape was three years in the Department of Corrections.

## ASSIGNMENT OF ERROR NO. 1:

Defendant claims the trial court erred "in establishing habitualization by considering an unrelated conviction from 2001." Defendant asserts the use of his 2001 conviction violated the spirit of La.Code Evid. art. 609.1, which, Defendant argues, "discourages the consideration of a prior, non-related conviction for the purposes of attacking a defendant's credibility[.]" Defendant cites *State v. Johnson*, 94-1379 (La. 11/27/95), 664 So.2d 94, wherein the supreme court noted the general rule that "[e]vidence of other crimes is generally inadmissible in the guilt phase of a criminal trial unless the probative value of the evidence outweighs its prejudicial effect[,]" and that this rule "ensures that a defendant who has committed other crimes will not be convicted of a present offense simply because he is perceived as a 'bad person'[.]" *Johnson*, 664 So.2d at 99.

While Defendant acknowledges that *Johnson* involved a "pre-verdict adjudicative hearing," he contends the same reasoning should apply to his habitual offender hearing.

9

In response, the State argues that Defendant's argument is misplaced and that La.Code Evid. art. 609.1 "does not apply in the context of the sentencing hearing where the trial court is obligated to consider the prior history or criminal activity as part of its sentencing considerations under La. Code Crim. P. Art. 894.1(B)(28)." The State further asserts that *Johnson* specifically applied to proceedings leading to a conviction and not to the imposition of sentence. Unlike at trial, the State contends, trial judges at a sentencing trial are specifically instructed to consider a convicted defendant's criminal history. The State cites *State v. Shaw*, 06-2467, pp. 16-17 (La. 11/27/07), 969 So.2d 1233, 1243-44 (footnote omitted) (alteration in original), in support of its contention that it is appropriate to consider a defendant's prior convictions at a habitual offender proceeding:

> First, the court failed to give effect to the clear and unambiguous language of the statute. The statute is plain and straightforward. It reflects a legislative intent to expose a person who has previously been convicted of a felony to imposition of habitual offender penalties for **any** felony committed **after** the date of the prior felony conviction. . . .

> Second, the court failed to construe the statute in a manner consistent with its object and purpose. As the *Porter* court correctly noted, the purpose of the Habitual Offender Law, is "to discourage commission of successive felonies and to enhance punishment for subsequent felonies." [*State ex rel. Porter v. Butler*, 573 So.2d 110 (La.1991).]

> As we have explained, the habitual offender statute was enacted "as a deterrent and a warning to first offenders and as a protection to society by removing the habitual offender from its midst." *State v. George*, 218 La. 18, 26, 48 So.2d 265, 267 (La.1950). The habitual offender statute does not create a separate offense or punish an individual for past crimes; rather, the statute increases punishment on the basis of an individual's status as a repeat offender. The goal is to deter and punish recidivism by punishing more harshly those who commit the most crimes. *State v. Johnson*, 97–1906, p. 8 (La.3/4/98), 709 So.2d 672, 677. ("Under this statute the defendant with multiple felony convictions is treated as a recidivist who is to be punished for the instant crime in light of his continuing disregard for the laws of our state. He is subjected to a long sentence because he continues to break the law.").

As the State asserts in brief, the only way to establish a defendant's status as a repeat offender is to introduce evidence of his prior conviction(s). Thus, the purpose of introducing a prior conviction at a habitual offender hearing is to establish a defendant's status as a repeat offender, not to convict him for being a bad person. Therefore, we find that this assignment lacks merit.

## ASSIGNMENT OF ERROR NO. 2:

In his second assignment of error, Defendant argues that his constitutional right to a speedy trial was violated, and therefore the trial court erred in denying his motion to quash.

On August 20, 2020, a new indictment was filed charging Defendant with one count of aggravated rape, three counts of sexual battery, and one count of simple escape. These offenses had previously been charged in separate docket numbers. At a hearing on August 24, 2020, the State explained that the prior docket numbers had been dismissed and "rolled" into the new docket number and that the original charges were nolle prosequied. Defendant entered a general objection to the reindictment because he had been in jail since 2015, and he also pled prescription as to count five (simple escape) because the charge had been pending for five years. Defense counsel further stated that "we'll go ahead, waive the reading of the bill and enter pleas of not guilty to each of the counts and request trial by jury, and we will be likely asserting speedy trial."

Ultimately, the matter was refixed for August 31, 2020; however, Hurricane Laura made landfall on August 27, 2020, and the district court was thereafter closed for a period of time.

According to the minutes, the next hearing was November 10, 2020. On that date, the State filed a "Motion and Order to Fix Severe Child Abuse DIV D Trial

11

Date." Trial was set for February 8, 2021, but then trial was re-fixed for the week May 10, 2021, based on the State's motion.

On May 11, 2021, defense counsel filed a written motion to quash alleging the State had exceeded both the statutory and constitutional delays for commencing Defendant's trial, and a hearing was held the same day. However, defense counsel's argument focused only on the statutory timeframe to commence trial. Defense counsel noted that the original indictment for simple escape was filed March 16, 2015, an indictment charging aggravated rape and two counts of sexual battery was filed April 9, 2015, and an indictment charging one count of sexual battery was filed April 16, 2015. Counsel further argued that the State had two years under La.Code Crim.P. art. 578 from those original indictments to commence trial, and that the State's re-billing "on the eve of accruing speedy trial over Mover's protest, showed obvious intent to avoid the effects of the passage of time."

Defense counsel further argued that, while he had previously filed continuances in the two prior docket numbers concerning counts one through four because an issue concerning the unconstitutionality of a non-unanimous jury scheme was pending in *Ramos v. Louisiana*, 590 U.S. ___, 140 S.Ct. 1390 (2020), a final decision was rendered by the United States Supreme Court in *Ramos* on April 20, 2020. Therefore, according to Defendant, the State had until April 20, 2021, to bring the matter to trial. Defense counsel further argued that count five (simple escape) was not subject to the continuances based on *Ramos*,

In response, the State argued that filing the new indictment on August 20, 2020 provided the State with another two years within which to bring the matter to trial in accordance with La.Code Crim.P. arts. 576 and 578. It further noted the various continuances filed by the defense, and that the last motion for continuance

based on *Ramos* was pending until the defense withdrew it on July 20, 2020. The State asserted the following:

> And if you look at the court record what you will see is that there were - - the original institutions were in 2014 and 2015.
>
> You see a joint motion to continue February 6th, 2017, defense motion to continue, May 8th, 2017, defense motion to continue, October 10th, 2017, defense motion to continue, March 5th, 2018. Defense motion to continue September 24th, 2018. Defense motion to continue, January 28th, 2019. Defense motion to continue, June 24th, 2019. Joint motion to continue, October 15th, 2019.
>
> Within a year of that date on August 20th of 2020, it was dismissed, and on that date there were still an additional - - by my math - - two and plus months to bring it to trial.
>
> The reason it was dismissed and reinstated, as Mr. King alluded to, was the only way the State can consolidate cases is by reinstating them together. A consolidation of cases is a defense only motion.
>
> We can sever to our heart's content, but because we have the power to decide who, when, and how to prosecute under article 61 if we intend to join charges we have to do it by reinstitution.
>
> So because we were still two months from statutory prescription and we did it to reinstitute charges, it is clear it was not reindicted solely to avoid two year statutory delay in bringing the case to trial.
>
> As such, on August 20th of 2020, when the case was reinstated, we had until August 20th of 2022 to bring it to trial. We still have not passed that date.

The State also argued that Defendant failed to present any argument concerning his constitutional right to a speedy trial, but alternatively argued that Defendant's constitutional rights were not violated because it had a reason for the delay – namely, over three years of continuances by defense counsel. The State also pointed out that the delay benefitted Defendant given the *Ramos* ruling.

Ultimately, the trial court denied the motion to quash "for several reasons. Mainly, because the delays that were recognized in the record, not only from

13

defendant[']s motions but from the rulings that were being anticipated from the supreme court, especially as it relates to Ramos."

On appeal, Defendant's argument focuses only on his constitutional right to a speedy trial. In response, the State argues that Defendant should not be permitted to assert this argument on appeal since it was not presented to the trial court. Nonetheless, the State also argues:

> In the instant case, defendant's various requests for continuance and especially his motion to declare that the non-unanimous jury was unconstitutional which was not withdrawn until July 2, 2020, extended the time within which the State had to bring the case to trial. The trial court's ruling was correct for the reasons stated. Additionally, the State can rely on the re-indictment extending the period for another two years as well. Finally, no constitutional challenge can survive where, as here, the defendant intentionally filed continuances for years to wait on a ruling from the United States Supreme Court. This assignment is without merit and should be affirmed on appeal.

Because Defendant has not argued in his brief to this court that his statutory right to speedy trial was violated, we deem that issue to have been abandoned and will not consider it. Uniform Rules - Courts of Appeal, Rule 2-12.4(B)(4). A Defendant's constitutional right to a speedy trial and statutory right to a speedy trial are separate inquiries. *See State v. Grudewicz*, 10-958, (La.App. 3 Cir. 3/23/11), 59 So.3d 568.

With respect to Defendant's constitutional right to speedy trial, we note that that Defendant's written motion to quash alleged that the State had exceeded both the statutory and constitutional delays for commencing trial; however, Defendant did not set forth any specific argument regarding his constitutional right in either his written motion or at the hearing. Louisiana Code of Criminal Procedure Article 841 provides, in pertinent part, "An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence."

14

Nevertheless, in *State v. Buckley*, 02-1288, p. 8 (La.App. 3 Cir. 3/5/03), 839 So.2d 1193, 1199-1200, this court reviewed "out of an abundance of caution[,]" a defendant's argument on appeal that his constitutional right to a speedy trial, even though the argument was not raised in the trial court, stating:

> We note *State v. Williams*, 02-1030, 02-898 (La.10/15/02), 830 So.2d 984, in which the court stated that generally issues not argued at trial will not be reviewed on appeal. "Constitutional issues are no exception." *Id*. at 988. However, we have found no cases specifically stating whether a failure to raise constitutional speedy trail [sic] rights at trial preclude a defendant from raising the issue on appeal. Further, *Williams* and [*State v.*] *Mansion*[, 98-992 (La.App. 5 Cir. 4/27/99), 733 So.2d 1212, *writ denied*, 99-1545 (La. 11/5/99), 751 So.2d 231] both dealt with attacks on the constitutionality of statutes, thus, they may not be on all fours with the present case. Therefore, we will review the claim out of an abundance of caution.

Therefore, we will likewise review Defendant's argument on appeal concerning his constitutional right to speedy trial out of an abundance of caution.

In *State v. Vernell*, 10-990, pp. 4-5 (La.App. 1 Cir. 12/22/10), 68 So.3d 553, 555-56, *writ denied*, 11-1912 (La. 2/3/12), 79 So.3d 1025 (footnotes omitted), this court stated the following about the standard for reviewing a trial court's ruling on a motion to quash:

> A trial court's ruling on a motion to quash should not generally be reversed in the absence of a clear abuse of the trial court's discretion. *See State v. Odom,* 2002–2698, pp. 5-6 (La.App. 1 Cir.6/27/03), 861 So.2d 187, 191, *writ denied,* 2003–2142 (La.10/17/03), 855 So.2d 765. However, a trial court's legal findings are subject to a *de novo* standard of review. *See State v. Smith*, 99-0606, 99-2015, 99-2019, 99-2094, p. 3 (La.7/6/00), 766 So.2d 501, 504. In this case the trial court's ruling on the motion to quash is based on a legal finding and is, therefore, subject to *de novo* review.

In *State v. Batiste*, 05-1571, pp. 6-8 (La. 10/17/06), 939 So.2d 1245, 1250-51, the supreme court provided the following analysis regarding a defendant's constitutional right to speedy trial and concluded that the defendant's right was not violated:

The constitutional right to a speedy trial is imposed upon the states by the Due Process Clause of the Fourteenth Amendment. *Klopfer v. North Carolina,* 386 U.S. 213, 223, 87 S.Ct. 988, 993, 18 L.Ed.2d 1 (1967). The underlying purpose of this constitutional right is to protect a defendant's interest in preventing pretrial incarceration, limiting possible impairment of his defense, and minimizing his anxiety and concern. *Barker v. Wingo,* 407 U.S. 514, 515, 92 S.Ct. 2182, 2184, 33 L.Ed.2d 101 (1972). The Supreme Court has set forth the following four factors for courts to consider in determining whether a defendant's right to a speedy trial has been violated: (1) the length of the delay; (2) the reasons for the delay; (3) the accused's assertion of his right to speedy trial; and (4) the prejudice to the accused resulting from the delay. *Id* at 531–532, 92 S.Ct. at 2192–93; *see also State v. Reaves,* 376 So.2d 136 (La.1979) (adopting *Barker* factors). The specific circumstances of a case will determine the weight to be ascribed to the length of and reason for the delay because "the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." *Reaves,* 376 So.2d at 138 (quoting *Barker,* 407 U.S. at 531, 92 S.Ct. at 2192).

In the instant case, approximately 19 months elapsed between the filing of the original bill of information and the granting of the defendant's motion to quash. However, the reasons for the delay cannot be placed solely upon the State. As Judge Cannizzaro pointed out in his dissent from the court of appeal's decision, approximately 10 months, from January 24, 2003, until November 24, 2003, were spent on motion hearings initiated by the defendant. *Batiste,* 904 So.2d at 772 (Cannizzaro, J. dissenting). In addition, from June 16, 2003, until November 24, 2003, the trial court had the defendant's motion to quash under advisement. Furthermore, the record reveals no intentional delay on the State's part for the purpose of gaining a tactical advantage.

Regarding the third *Barker* factor, defendant did not assert his right to a speedy trial until he raised the issue in his motion to quash the bill of information after the charge was reinstituted. Finally, the last factor to be considered is whether the delay prejudiced the defendant. In support of this argument, the defendant claimed he had to endure the stigma of the instant charge for 20 months and that he suffered from the anxiety involved with a criminal prosecution. He further claimed that he was fired from his job in New Orleans and was only able to obtain a new job in Florida; consequently he was inconvenienced by having to travel for court appearances. However, there was no suggestion that his defense was ever impaired by the delays of his prosecution. In addition, the defendant's presence was waived at a majority of the court proceedings. Defendant was not incarcerated during the 20-month period. Against this backdrop, it is clear that, after reviewing the *Barker* factors, the State's action did not deny the defendant his right to a speedy trial, or otherwise cause specific prejudice to his defense.

Under the specific facts presented by this case, we find the district court abused its discretion in granting defendant's motion to quash the bill of information. The record indicates the State entered a nolle prosequi because the victim was not present for trial and was unsure whether she wanted to go forward with her testimony. The State did not violate any of the time constraints imposed by statutory law. Finally, defendant's constitutional right to a speedy trial was not violated. Consequently, the court of appeal erred in affirming the judgment of the district court.

As to first two *Barker* factors, the length of the delay and the reason for the delay in commencing trial, approximately six years elapsed in the instant case between the filing of the original bills of information and the Defendant's motion to quash. Then, not quite nine months, elapsed between the reinstitution of prosecution and the motion to quash.

As the State argued at the hearing on Defendant's motion to quash hearing, the charges were reinstituted so that they could be consolidated. Reinstituting prosecution was the only means by which the State could consolidate the charges. *See* La.Code Crim.P. art. 706 and 1966 Official Revision Comment (b). Because the State had a reason other than avoiding the time limitation for reinstituting the charges against Defendant, the reinstitution was proper under La.Code Crim.P. art. 576. Thus, the State had two years from the reinstitution to commence trial. *Vernell*, 68 So.3d 553.

In addition, the reasons for the delay cannot be placed solely upon the State. As defense counsel acknowledged, five of the six years were the result of a purposeful delay for the Supreme Court to decide the unanimous verdict issue. While defense counsel argues this delay applied only to the aggravated rape and sexual battery charges, counsel further acknowledged, however, that he filed numerous motions to continue on the simple escape charge, the final one being on October 15, 2019. Thus, the State had until October 15, 2020, to commence trial as

17

to simple escape based solely on defense motions to continue. Furthermore, Hurricane Laura made landfall on August 27, 2020, causing additional delays in the midst of the Covid-19 pandemic.

Regarding the third *Barker* factor, Defendant did not assert his right to a speedy trial until he raised the issue in his motion to quash the bill of information after the charges were reinstituted on August 20, 2020. While defense counsel mentioned Defendant's speedy trial rights at the August 24, 2020 arraignment on the reinstated charges, Defendant did not file a motion to quash until May 11, 2021.

The fourth *Barker* factor to be considered is whether the delay prejudiced the defendant. Defendant's counsel alleges in his brief to this court that Defendant's long period of confinement has prejudiced him by causing him much distress. However, there is no suggestion that his defense was ever impaired by the delays of his prosecution. Moreover, as the State points out, the delay allowed Defendant to be tried under the new requirement that all of his charges be decided by a unanimous jury.

Therefore, after considering the *Barker* factors, we find that the State's actions did not deny Defendant his constitutional right to a speedy trial, or otherwise cause specific prejudice to his defense. Therefore, the trial court did not err in denying Defendant's motion to quash.

### ASSIGNMENT OF ERROR NO. 3:

In his third assignment of error, Defendant asserts "the trial court erred in denying the motion for new trial, in violation of the Sixth Amendment to the U.S. Constitution[,]" and suggests that a *de novo* standard of review applies. Defendant's brief states:

To further vindicate his Sixth Amendment rights, Mr. Demouchet filed a motion for a new trial in July 2021 (Record, p. 261). In this motion, he asserted that hearsay evidence was primarily used to secure his conviction, with particular emphasis on a detective's background testimony and the first reporter's testimony (Record, p. 261). In *Lilly v. Virginia*, the Supreme Court emphasized that hearsay evidence used to convict a defendant must possess an indicia of reliability by virtue of its inherent trustworthiness, not by reference to other evidence at trial. *Lilly*, 527 U.S. 116, 119 S.Ct. 1887 (1999). The jury reached its verdict by listening to young women recall stories from their childhood; this fact does not minimize the gravity of the charges in the present case, but it does shed light on the State's trial strategy: to have hearsay build on itself by reference to other testimony offered during the proceeding (*See, e.g.* Record, p. 1459). Once more, recognizing the sensitive nature of the allegations made against Mr. Demouchet, and the convictions secured against him, there should be a high threshold of admissibility applied to the evidence considered by the jury.

In its response, the State argues that while Defendant complains about the admission of hearsay evidence, he fails to cite to any specifics or objections made on the record and failed to preserve the issue by objecting at trial. The State notes that while there is one record reference to testimony by of a sheriff's detective who participated in interviews with some of the victims, there was no hearsay objection made a trial in connection with this testimony. The State further states in its brief:

> In the instant case, the three victims all testified as did other victims who testified as article 412.2 witnesses. The case officers testified, and in some instances the forensic interviews conducted at the Child Advocacy Center was played for the jury. No further indicia of reliability should be needed or required.

We agree with the State that Defendant's argument is insufficient and should be disregarded. Uniform Rules—Courts of Appeal, Rule 2-12.4 states the following, in pertinent part, regarding the requirements of an appellant's brief:

> A. The brief of the appellant shall contain, under appropriate headings and in the order indicated:
>
> . . . .
>
> (9) the argument, which shall contain:

19

(a) appellant's contentions, with reference to the specific page numbers of the record and citations to the authorities on which the appellant relies,

(b) for each assignment of error and issue for review, a concise statement of the applicable standard of review, which may appear in the discussion or under a separate heading placed before the discussion, and

(c) for each assignment of error and issue for review which required an objection or proffer to preserve, a statement that the objection or proffer was made, with reference to the specific page numbers of the record;

. . . .

[B] (3) The court may disregard the argument on an assignment of error or issue for review if suitable reference to the specific page numbers of the record is not made.

(4) All assignments of error and issues for review must be briefed. The court may consider as abandoned any assignment of error or issue for review which has not been briefed.

Defendant has not provided any citations to any specific objections at trial, and we agree with the State that the one page referenced by Defendant does not contain an objection. Although an objection was entered by defense counsel a few pages later, the objection involved the cumulative nature of the testimony, not hearsay.

In order to preserve an issue for appeal, a party must make a contemporaneous objection. Louisiana Code of Criminal Procedure Article 841(A) provides, in part, that "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence." Louisiana courts have consistently recognized this as the contemporaneous objection rule, noting its dual purposes: "(1) to put the trial judge on notice of the alleged irregularity so that he may cure the problem and (2) to prevent a defendant from gambling for a favorable verdict and then resorting to appeal on errors that might easily have been corrected by objection."

*State v. Dossman*, 06-449, 06-450, pp. 14-15 (La.App. 3 Cir. 9/27/06), 940 So.2d 876, 885, *writ denied*, 06-2683 (La. 6/1/07), 957 So.2d 174.

For the foregoing reasons, this assignment of error will not be considered.

## ASSIGNMENT OF ERROR NO. 4:

In his final assignment of error, Defendant challenges the excessiveness of the sentences imposed. This error is pretermitted by our previous conclusion that the sentences be vacated and the case remanded for resentencing in light of the errors patent.

## DECREE:

Defendant's convictions are hereby affirmed. However, the sentences imposed at the habitual offender hearing for all counts are hereby vacated, and the case is hereby remanded for resentencing. The trial court is instructed to specify on which count or counts Defendant is adjudicated a second habitual offender, to vacate the original sentence(s) on those count(s), and to impose a new sentence(s) pursuant to La.R.S. 15:529.1, if appropriate. The trial court is also instructed to amend the minutes of original sentencing to correctly reflect that the trial court's original sentence for simple escape was three years in the Department of Corrections.

**VACATED IN PART, AFFIRMED IN PART, AND REMANDED WITH INSTRUCTIONS.**